## Wolflin-Luhring Lumber Co., et al. v. Mosely, et al.

(Decided March 11, 1913.)

### Appeal from Henderson Circuit Court.

1.  Mechanics' Liens—Act of 1910—Sufficiency of Notice.—A notice that fails to specify the amount for which a lien is claimed is insufficient under the mechanics' lien law as amended by the Act of 1910.

2.  Mechanics' Liens—Act of 1910—Sufficiency of Notice.—Under the mechanics' lien law as amended by the Act of 1910, requiring notice in writing to the owner of the property or his authorized agent "immediately after the last item of said material or labor is furnished," the word "immediately" is used in the sense of "promptly," and a notice given eight days after the last item of material or labor is furnished, is not sufficient.

3.  Mechanics' Liens—Act of 1910—Sufficiency of Notice.—Where a sub-contractor, after the completion of his contract, returns to the building and makes certain repairs not called for by his contract, and which he was under no obligation to make, merely for the purpose of enabling him to give the notice required by the Act

of 1910, in order to acquire a lien, a notice pursuant thereto, though given in due time, is not sufficient.

MONTGOMERY MERRITT for appellants.

YEAMAN & YEAMAN for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiffs, the Wolflin-Luhring Lumber Company, an Indiana corporation, and Harding & Feix, brought this action against J. C. Mosely and his wife, Myra Louise Mosely, to enforce mechanics' liens on a house and lot owned by Myra Louise Mosely in the city of Henderson. The Wolflin-Luhring Lumber Company asked for a lien in the sum of $552.57, while Harding & Feix asked that they be adjudged a lien in the sum of $142.35. The chancellor denied them the relief prayed for, and they appeal.

The facts are as follows:

Myra Louise Mosely owned the lot in question. On May 16, 1911, her husband, Dr. J. C. Mosely, entered into a contract with G. T. Ashby, a carpenter and contractor, by the terms of which Ashby agreed to build a residence on the lot in question for the sum of $3,731.25. The Wolflin-Luhring Lumber Company contracted with Ashby to furnish the mill work, with the exception of the rough lumber, at the price of $1,035.00. Of this sum there was paid all but a balance of $532.57.

Harding & Feix had the contract for the roofing and guttering and other tin work on the house. The contract price was $216.75. Of this sum $150 was paid, leaving a balance due of $66.75. The balance of their claim, $75.60, is based on a contract with Dr. Mosely, by which it is claimed he agreed to pay the actual difference in the cost of the shingles required by the specifications and the shingles actually furnished by Harding & Feix.

Ashby, the contractor, did some extra work on the house, Mosely actually paying him $293.95 more than the contract price. Ashby, however, claims that his bill for extra work is much in excess of that. However that may be, the question is not material to this case. The last payment made by Mosely to Ashby was on November 25, 1911. About that time Ashby became financially embarrassed, and he and Mosely had some disagreement. About the first of December, or early in that month, Ashby threw up the job, and Mosely and his family moved in.

Nearly all of the lumber embraced in the contract of the Wolflin-Luhring Lumber Company was furnished prior to December 1st. On December 8th Ashby ordered from the Wolflin-Luhring Lumber Company a drain board and apron. These items were shipped on December 13th, according to the lumber company, but prior to that, according to the evidence of Mosely. On December 13th, the lumber company served a written notice on Dr. Mosely to the effect that it intended to hold liable the real estate improvements on which it supplied the mill work as per contract. The notice specifies that it was given in accordance with the Kentucky lien law, and that the last shipment was made that afternoon. Accompanying the notice was a letter addressed to Dr. Mosely, stating that the enclosed notification had been sent only for the reason that they desired to protect themselves, and further stating ''you will of course understand that the sending of this notification does not mean that a lien will be filed against your property, or that there is any doubt in our mind as to satisfactory settlement, but it sometimes occurs that differences arise between the different contractors and the owner which cause litigation, and by our taking advantage of the protection it enables us to have a clean bill.'' The notice accompanying the letter did not state the amount for which the lumber company claimed a lien.

The giving of this notice was an attempt on the part of the lumber company to comply with the following provision of the mechanics' lien law then in force:

''That no person shall acquire a lien under this section unless he shall notify in writing the owner of the property to be held liable, or his authorized agent, immediately after the last item of said material or labor is furnished, of his intention to hold the said property liable, and the amount for which he would claim a lien,'' etc.

After December 13th, Ashby wrote the lumber company that they had failed to furnish several articles embraced in their contract. On December 21, 1911, a notice was sent to Dr. Mosely and his wife, stating that the lumber company intended to hold the property liable, and giving the amount for which the lumber company claimed a lien. On December 26th, Ashby ordered a chair rail and shelf. These articles were shipped on December 28th. Dr. Mosely says that on December 28th there were

shipped to him three planks which he ordered returned on January 1, 1912. These planks were not necessary for his house, nor were they used in it or ordered by him or covered by the contract. These planks were all the material sent after December 13th. On December 28th, the lumber company sent another notice of its intention to claim a lien, and of the amount for which the lien was claimed.

Taking into consideration the fact that Ashby, at the time of writing for the extra articles, had given up the job, and the further fact that there is evidence tending to show that the articles ordered after December 13th were not embraced in the specifications or necessary for the completion of the house, we are inclined to the opinion that the articles ordered after December 13th were ordered merely for the purpose of giving the lumber company another opportunity to give notice that they would claim a lien. That being true, the notice of December 28th cannot be regarded as a compliance with the statute.

The only question to be determined, then, is: Was the notice of December 13th or the notice of December 21st sufficient under the statute? Without taking into consideration the fact that the notice of December 13th was accompanied by a letter to the effect that the sending of the notice did not mean that a lien would be filed, the notice itself was insufficient under the statute, because it failed to give the amount for which a lien was claimed. The notice of December 21st was given eight days after the last item of the material was furnished. The question is: Was that notice given "immediately after the last item of said material was furnished?"

The word "immediately" is used in the statute in question with reference to time. Ordinarily it is defined as "instantaneously," "instanter," "instantly," "forthwith," "without the intervention of time," "without the lapse of any appreciable time." However, it is not a word of very precise signification, and is rarely employed to designate an exact portion of time. Thus, it is often construed to mean "within a reasonable time." Solomon v. Contenental Fire Insurance Company, 160 N. Y., 595, 46 L. R. A. 682; or "within a reasonable time under all the facts and circumstances of the case." Peoples Accident Association v. Smith, 126 Pa. St., 317, 12 Am. St. Rep. 870. It is also held to mean "within such convenient time as is reasonably requisite." Martin v.

Pifer, 96 Ind., 245; or "may be reasonably necessary under the circumstances to do the thing required." Foster v. New York Fidelity, etc. Co., 99 Wis., 447, 40 L. R. A. 833; Woodmen Accident Association v. Pratt, 62 Neb., 673, 89 Am. St. Rep. 777, 55 L. R. A. 291. Again, it is held to mean "without any delay except such as is necessary in the usual course of the particular business in hand." Inman, &c., v. Barnum, 115 Ga., 117. The broader meaning of "within a reasonable time under all the facts and circumstances of the case" is usually applied in the case of accident insurance policies requiring ammediate notice of the accident to be given. In this character of cases the policy is construed most favorably to the insured. While it is true that the word "immediately," as used in the statute in question, is not used in the narrow sense of "instantaneously," it is evidence that it is not used in the enlarged sense of "within a reasonable time." Our conclusion is that it was used in the sense of "promptly" and without attempting to fix a precise time within which the notice should have been given, it is sufficient to say that the notice of December 21st, which was given eight days after the last item of the material was furnished, was not given "immediately" within the meaning of the statute.

In this connection it is proper to remark that the act in question is no longer in force, it having been amended by an act approved March 18, 1912. Acts of 1912, chapter 115.

As to the claim of Harding & Feix, it is sufficient to say as to that portion of their claim embraced in the original contract that they finished their contract several weeks before, but on January 11th went to the house in question and repaired the gutter which had been injured by one of Ashby's men. The repairing of this gutter was not a part of their contract. They were under no obligation to do the work. Feix admits that he did this work in order that he might serve on Dr. Mosely the notice required by the statute. Under these circumstances, the notice given by Harding & Feix was not sufficient. As to the item for the difference between the shingles called for in the specifications and the shingles actually put on the roof, Feix says that the shingles put on the roof were not those required by the specifications, but were the shingles which he agreed to put on the roof under a contract with Dr. Mosely whereby the latter agreed to pay

the difference in cost. Dr. Mosely and his witnesses say that the shingles actually put on the roof were those required by the specifications, and that Harding & Feix did not comply with their contract to put on a different class of shingles. Upon this question of fact we see no reason to disturb the finding of the chancellor.

Judgment affirmed.