## City of Ashland v. Ben Williamson & Co. et al.

March 16, 1943.

448

John W. McKenzie and Frank C. Malin for appellant.

R. D. Davis for Ben Williamson & Co.

Woods, Stewart & Nickell for Williams Electric Co.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming in part and reversing in part.

On May 6, 1930, the City of Ashland, Kentucky, through its Commission of Waterworks, entered into a contract with L. E. Payne to construct a filter plant addition to its waterworks system for the sum of $39,630. Payne executed bond for the performance of the contract with the Standard Accident Insurance Company as surety. Payne sublet the plumbing and heating construction to the Ashland Plumbing and Heating Company (hereinafter called the plumbing company), and subcontracted the electrical work to the J. C. Williams Electric Company (hereinafter called the electric company). Payne purchased some of the materials used in the performance of the contract from appellee Ben Williamson and Company (hereinafter called Williamson and Company) which was charged directly to the account of Payne. The plumbing company also purchased its materials used in the performance of its subcontract, from Williamson and Company which was charged on its books to the plumbing company, but according to the contention of Williamson and Company Payne authorized the sale of the materials to the plumbing company and became responsible to Williamson and Company therefor. The contract was completed in December, 1930, or late in January, 1931, the exact date being in dispute, which is the basis of the principal issue in this case.

The money appropriated by the city for the performance of the contract was distributed and paid to Payne, the principal contractor, but he failed to pay Williamson and Company for the materials furnished to him, Payne, and also to the plumbing company. On February 27, 1931, Williamson and Company filed a notice of lien with the city, and on February 28, 1931, filed a lien statement in the office of the clerk of the Boyd county court as provided in sections 2463 and 2492, Carroll's Kentucky Statutes, now appearing as sections 376.010 and 376.210, respectively, KRS, relating to

materialman's liens, seeking to recover of them the sum of $3,114.33 with interest from February 28, 1931, for materials furnished to Payne and his subcontractor, the Plumbing Company, and asked that it be adjudged a lien against the waterworks plant. The electric company furnished its own material and labor in the performance of its subcontract with Payne and its accounts have no connection with that of Williamson and Company. The electric company also brought a similar action against the city and Payne to recover of them the sum of $1,270.40 for the material, labor, etc., furnished by it and also sought a materialman's lien and that action was consolidated with the Williamson and Company action and the consolidated actions were heard and tried together and disposed of in the same judgment.

Payne filed a demurrer to the petition of Williamson and Company, which demurrer was overruled. The city filed an answer and cross-petition in which, because of insufficient knowledge, it denied the allegations of the petition and further alleged that the Standard Accident and Insurance Company executed for Payne a performance bond and that it should be made a party. It denied that Williamson and Company filed its notice of lien within thirty-five days after the last item of material was furnished. The insurance company filed an answer in which it denied the account of plaintiff (Williamson and Company) and pleaded affirmatively that the waterworks is public property and a lien could not be asserted against it, and further, that the work was completed and payment made in full before the city had any knowledge or notice of plaintiff's claim. A demurrer was sustained to that part of the answer. On January 31, 1933, a personal judgment was entered against Payne and the action was proceeded with as against the city. Many other pleadings were filed and numerous demurrers filed thereto, some of which were sustained and others overruled, and the issues finally made and the case submitted to the chancellor whereupon judgment was rendered in favor of Williamson and Company for the sum of $2,249.30 for material furnished by it directly to Payne, and the further sum of $716.33 for the material furnished to the plumbing company, and $48.70 interest which had accumulated at the time the suit was filed, making a total of $3,014.33, and also entered judgment in favor of the electric company for the sum of $1,270.40, and to secure the payment of the said judgments, interest and costs to

the plaintiffs in each case, awarded a mechanic's and materialman's lien against the pumping station property of the Ashland Water Works and that in lieu of enforcement thereof against the property, ordered and directed appellant, city, to provide funds and make payment of the said judgments, interest and costs in full satisfaction of the said liens.

It is the contention of appellant that the last material furnished by Williamson and Company to Payne was on December 2, 1930, and the last material furnished by it to the plumbing company was on January 30, 1931. But it is insisted that Williamson and Company cannot include in its account against Payne its claim against the plumbing company, and hence the lien notices were given more than thirty-five days after it had furnished the last item of material and for that reason it is not entitled to any lien at all. It is conceded, however, that if the plumbing company account is properly included in the Williamson and Company account with Payne, then the notices were in time even under section 2463, Carroll's Kentucky Statutes. And, it is further conceded that if section 2492, which requires sixty days' notice, is applicable the lien notices were in time, but appellant insists that that section is not applicable and that the time to give notice of lien runs from December 2, 1930, the date of the last material furnished by Williamson and Company directly to Payne, rather than January 30, 1931, the date it furnished the last material to the plumbing company.

It is the contention of Williamson and Company that although the material furnished by it was charged on the books to the plumbing company rather than to Payne, it was agreed and understood that Payne would be responsible for the material furnished to the plumbing company. Ben Williamson, Jr., the treasurer of Williamson and Company, H. M. Lewis, president of the plumbing company, and L. B. Burke, credit manager for Williamson and Company, testified that Lewis sought to purchase materials from Williamson and Company but it refused to extend the plumbing company any further credit because it already owed $3,500 on an unsecured account which was long past due. Burke referred Lewis to Ben Williamson, Jr., and Lewis contacted Mr. Williamson and was advised by him to bring in the contractor, Mr. Payne, and they would discuss the situation

together; that they could not furnish Mr. Lewis material without some definite arrangement as to the payment of same. Later Mr. Payne wrote Williamson and Company a letter either guaranteeing or authorizing it to charge purchases by Lewis to him (Payne). He did not produce the letter, stating that it had been misplaced. He said that they furnished the materials to Lewis (the plumbing company) and either charged it to Payne or sent him duplicate invoices of the same, all of which were included in the account sued on. These witnesses are corroborated by the fact that Payne, in making settlement with Lewis for the plumbing company, knew exactly the amount due Williamson and Company for materials furnished Lewis for the plumbing company and deducted same from the amount he owed the plumbing company. Mr. Lewis testified that in the settlement with Mr. Payne on the subcontract he accepted Mr. Payne's statement for it. He was asked if Mr. Payne had received duplicate invoices of the materials furnished by Williamson and Company to him for the plumbing company, and he answered "He had received the originals because I didn't get my total. He had the total. He told me what my balance was and I settled on that basis." If this evidence is to be accepted, the fact that the material furnished to the plumbing company was charged to it on the books of Williamson and Company is not controlling (Kennon v. Tolle, 9 Ky. Law. Rep. 811). In passing upon this point the chancellor, in a memorandum opinion, said:

> "A very good reason is given for refusal to charge these items to Ashland Plumbing and Heating Company which was the bad condition of its then existing account. No one denies this. It does not seem probable that they would make any further charge to the Plumbing Company and most probably that they did make the arrangement claimed by plaintiff.

> "I believe the preponderance of evidence is in favor of plaintff on this point and that the items delivered to Ashland Plumbing & Heating Company for work on this job was chargeable to L. E. Payne."

There was evidence to the contrary, presenting a conflict, but we think the evidence is sufficient to sustain the chancellor's conclusion.

We will now consider the question of whether or not Williamson and Company gave lien notice in the time required in section 2463 of the statutes. Appellee Williamson and Company admits that the inspector on the job left early in December, 1930, and arranged with the manager of the waterworks to issue a final certificate or estimate upon being advised by the manager that the job had been completed, and in pursuance of this arrangement the final estimate was issued December 30, 1930. It is insisted, however, that notwithstanding the final estimate or certificate, the contract had not in fact been completed on December 30 and was not completed until January 30, 1931, which would bring the lien notices within the thirty-five days' limit required by the statute. This contention is based upon the evidence of H. M. Lewis, president of the plumbing company, who testified that he finished his part of the contract late in January, 1931, and that there were some defective air valves and a broken radiator valve and trouble with gas fumes from the radiator. He said he was continuously on the job until it was completed in January, 1931, and the last thing he put in was a sillcock; that the installation of the sillcock was included in the original contract and was required by the specifications but they had forgotten or overlooked installing it. His evidence on this point is uncontradicted. Appellant insists that the installation of the sillcock and other minor matters testified to by Lewis were in the nature of repairs and was an afterthought on the part of Williamson and Company in order to extend the time of giving lien notices in order to bring the notice within the limitations of the statute. The chancellor found that the installation of the sillcock and other matters testified to by Lewis were a part of and included in the main contract rather than minor repairs, etc., made for the purpose of extending time of giving notice, and that January 30, 1931, was the proper date of the last material furnished and acts done in the performance of the contract, and therefore the notices of February 27 and 28 respectively were in time.

It is the rule that minor repairs or other trivial things done not in good faith, or not necessary in the performance of the contract, but for the purpose of extending the time in which to give lien notices, cannot prolong the time of giving notice (Vogt v. Cannon Electric Company, 245 Ky. 766, 54 S. W. (2d) 338). But since it is shown by undisputed evidence that the installation of

the sillcock and other matters performed by the plumbing company in the late part of January, 1931, were included in the contract and specifications but had been overlooked or forgotten and necessary to complete the contract, it was done in performance of the contract and the chancellor correctly so held (National Surety Company v. Price, 162 Ky. 632, 172 S. W. 1072; Akers & Co. v. Weil, 251 Ky. 689, 65 S. W. (2d) 712).

The chancellor also held that section 2492, Carroll's Kentucky Statutes, was also applicable. That section provides for liens in favor of all persons who perform or furnish labor, materials, supplies or teams for the construction or improvement of any canal, railroad, turnpike ''or other public improvement in this Commonwealth, by contract, express or implied, with the owner or owners thereof, or by sub-contract thereunder.'' It further provides that notice of such lien shall be filed in the county clerk's office within sixty days after the last day of the month in which such material, labor, etc., was furnished. Under this statute, if it be conceded that December 30, 1930, was the proper date for the running of the statute as contended for by appellant, the notices of February 27 and 28, 1931, were in time. Appellee Williamson and Company contends that the improvement of the waterworks system in the City of Ashland was a ''public improvement'' referred to in the statute, supra. Appellant contends that improvement of a city waterworks system is not such ''public'' improvement as referred to in the statute, and is not included therein either expressly or by implication and therefore that section of the statutes is not here applicable. At first blush that section of the statutes as then in force (1930 edition Carroll's Kentucky Statutes) might appear more or less ambiguous. That section was amended, however, by the 1934 General Assembly, c. 157, but the amendatory act does not purport to repeal or modify the old statute with respect to liens except to the extent that the lien provided for ''shall attach only to any unpaid balance due the contractor for the improvement,'' a provision not contained in the statute before it was amended, and which was in force at the time of the contract and improvements here in question were made. It is apparent that the legislature construed the language ''other public improvement'' as contained in the 1930 edition of the statutes, as authorizing a lien against all public improvements, including improvements to city

property, such as are here involved, and the amendatory act limiting the lien to the unpaid balance due the contractor, was for the purpose of preventing liens against public property which was authorized before the amendment. If the legislature had not construed the old statute as authorizing such liens, we see no reason for the amendment. We think the amendatory act is in effect a legislative construction of the previous statute, giving it the construction pointed out above. It follows, therefore, that the chancellor properly held section 2492 of the statutes applicable as well as section 2463 (Steele & Lebby v. Ayer & Lord Tie Co., 246 Ky. 379, 55 S. W. (2d) 520).

Appellant next insists that if the notices of lien were filed in time the lien asserted could attach only to the unexpended funds, if any, appropriated for the contract at the time notices were given, but since the money had been distributed no lien could attach, and as support the case of Steele & Lebby v. Flynn-Sullivan Company, 245 Ky. 772, 54 S. W. (2d) 325, and perhaps other similar or like authorities are cited. In the case, supra, there were unexpended appropriated funds still in the hands of the county and it was held that those funds may be impounded and subjected to the satisfaction of the lien. But the precise question as to what would have been the remedies or rights of the lien holders if all the funds appropriated for the contract had been expended, as in the case at bar, was not involved in that case. It is said, however, in the course of the opinion that claims arising under the lien statute could not attach to public structures.

The precise case here involved was presented in the case of Allen County v. United States Fidelity & Guaranty Co., etc., 122 Ky. 825, 93 S. W. 44, 46. It was held in that case that county or municipal property devoted to public use and necessary to the proper administration of governmental affairs would not be sold to satisfy a mechanics' lien, citing as support certain cases, and it was pointed out that in those cases it was held that the laborers and mechanics might file their liens and have subjected to the payment of their debts money due by the municipality to the contractor. But, it is further pointed out that in the case then under consideration (Allen County case) at the time the liens were filed there was no money due by the county to the contractor and there-

fore no money in the hands of the county that the lien creditors could subject to the payment of their debts. It was contended that since the lien creditors could not sell the public building to satisfy their debt, nor enforce their liens against any money in the hands of the county, they were entirely without remedy, and although they furnished material in the construction of the building, they must be denied the right to receive pay for it. In answer to that argument the court said "To this argument we cannot assent. It is against public morals and opposed to every principle of justice and fair dealing. As aptly said in Hightower v. Bailey, 108 Ky. 198, 56 S. W. 147, 49 L. R. A. 255, 94 Am. St. Rep. 350 [22 Ky. Law Rep. 88], 'every one who by his labor or material has contributed to the preservation or enhancement of property of another thereby acquires a right to compensation.' "

And, further said the court:

> "And there is no reason why a municipality, that erects buildings for the use of the public, should occupy in this respect a more favorable position than the citizen. Municipalities, in the creation of debts, are controlled by certain limitations; but within these limits the municipality occupies toward the laborer or materialman the same attitude as the citizen. Each should stand on the same footing. One no more than the other should be permitted to secure the benefit of labor and material in the construction of useful buildings without paying for it. In fact, the municipality should be required to respond more promptly to the mandate of the law than the citizen, and held to a stricter accountability in the payment of its just and legal obligations. And where a municipality has within constitutional limits provided for the erection of a public building, and secured in its construction the labor and material of the citizens, the court will compel it to pay him."

If it be conceded that the Allen County case, supra, is apparently in conflict with the Steele & Lebby case and others of a similar nature, we think the Allen County case is more directly in point with the case at bar, since in that case and the present case there were no unexpended appropriated funds available to satisfy the lien-

holder's debt. And further, even without precedent of authority we would be inclined to follow the rule enunciated in the Allen County case because it is in harmony with natural justice and the equities of the parties.

It may be noted, as shown in the quoted part of the chancellor's judgment, that although a lien was adjudged against the public property (water system) it was not ordered sold in satisfaction of the lien, but directed the city to provide funds and make payment of the judgment, interest and costs in full satisfaction of the lien. It may be said that a lien against property without the right to sell the property to satisfy the lien debt, would be a futile thing. Conceding that to be true and treating that part of the judgment as surplusage, it does not affect that part of the judgment which requires the city to provide funds in some way or manner to satisfy appellee's debt. The city and its inhabitants and all taxpayers have the use and benefit of appellee's material and, as aptly said in the Allen County case, supra, there is no reason why municipalities, counties or other governmental units should not be required to pay its just debts, the same as an individual. We think the judgment was correct and proper in the circumstances of this case.

It is next insisted that appellee, Williamson and Company, is not entitled to interest and that the court erred in adjudging interest from February 28, 1931, the date of notice of lien. If the money sought to be recovered was an unliquidated demand, appellant's contention might be more plausible. Under the contract the money was due when the contract was completed, or at the most could not have been beyond the time of notice of lien, which was February 28, 1931. A similar or like question was involved in the case of the City of Louisville v. Henderson's Trustee, Ky., 13 S. W. 111, and it was held that where by the contract between the parties the debt is due at a certain time the debtor impliedly promised to pay interest from the due date of the debt and cannot defeat the creditor's right to interest by an unsuccessful dispute of the amount of the debt. See, also, Henderson Cotton Manufacturing Co. v. Lowell Machine Shops, 86 Ky. 668, 7 S. W. 142; Congoleum-Nairn, Inc., v. M. Livingston & Co., 257 Ky. 573, 78 S. W. (2d) 781; United States Cast Iron Pipe & Foundry Co. et al. v. Henry Vogt Machine Company and S. K. Luton,.

182 Ky. 473, 206 S. W. 806. Many other authorities of a like nature might be cited, but since the cases cited supra are conclusive of the question we deem it unnecessary to cite cumulative authorities. It follows therefore that the court committed no error on this item.

We now come to consideration of the claim of the electric company. Appellant contends that the electric company completed its subcontract with Payne on December 10, 1930, but notice of lien was not given the city until March 7, 1931, and also notice filed in the clerk's office on March 9, 1931. The electric company contends, however, that the time to file notice was extended by reason of some work done and material furnished by it on February 3, 1931, to repair a short in the electric wiring caused by the settling of filled ground. It is admitted that this was the only work done or material furnished since December 10, 1930, and the city had been using the water system since that time, and neither the city nor Payne, the principal contractor to whom the electric company was directly responsible, did not claim that the work had not been completed in December, 1930, according to the contract. J. C. Williams testified that the engineer in charge of the plant called him on or about February 3, 1931, and said they were having some trouble with the wiring of the clarifier and primary mixing basin. He said that they had what is known as a cross in the wire and it was touching the conduit causing a ground or short circuit. It is further shown by his evidence that this repair to the electric wiring was made necessary only because of the settling of filled ground but not due to any faulty work in the construction. Mr. Williams said it took about three hours to do the work, and only a small amount of material was used. He said no one paid him for making the repair and that he made it under the year's guarantee of his work. He said that the trouble with the wiring was at a junction box that came through a pipe and in the settling of the ground the wires pulled through the pipes in the junction box and caused it to cut through the insulation or wires and caused a ground.

We think it is clearly shown by J. C. Williams' own testimony that his subcontract with Payne was completed in December, 1930, and the work accepted and no complaint made as to the completion of his contract, and that the repairs of the electric wire made by him on

458

February 3, 1931, was not due to any faulty work on his part or lack of completion of the contract, but was due to a settling of filled ground, a condition for which he was not responsible and which occurred approximately three months after the contract had been completed.

It is the rule that work done to remedy defects or to repair damages caused by casualty after the completion of the contract does not extend the time to give notice of lien. Vogt v. Cannon Electric Company, supra; Wolflin-Luhring Lumber Co. et al. v. Mosely et al., 152 Ky. 701, 154 S. W. 22. The statute specifies the time in which lien notice shall be given after the last material furnished or work done, but makes no provisions with respect to any time the contractor may guarantee the work. If a year's guarantee of the work performed was sufficient to extend the time for giving notice of lien then the notice would be prolonged for a year after the furnishing of the last material or work done rather than the thirty-five days prescribed in section 2463 of the statutes, or the sixty days prescribed in section 2492 of the statutes. It is obvious, therefore, that work done or repairs made pursuant to a time guarantee cannot extend the time of notice of lien. We are impelled to the conclusion therefore that the electric company's notice of lien was not in time under either section of the statutes relied upon, and it is not entitled to a lien of any nature against the property of the city.

Wherefore, the judgment is affirmed as to Ben Williamson and Company, and reversed as to J. C. Williams Electric Company, and remanded for proceedings consistent with this opinion.