**SANDUSKY FOUNDRY & MACHINE COMPANY, Plaintiff,**

v.

**The CITY OF WICKLIFFE et al., Defendants.**

Civ. A. No. 2028.

United States District Court,
W. D. Kentucky,
Paducah Division.

June 8, 1972.

Edgar A. Zingman, Wyatt, Grafton & Sloss, Louisville, Ky., William L. Shadoan, Wickliffe, Ky., Taft, Stettinius & Hollister, Cincinnati, Ohio, for plaintiff.

James G. Wheeler, Wheeler & Marshall, Paducah, Ky., James W. McDonnell, Jr., Canada, Russell & Turner, Memphis, Tenn., Waller, Threlkeld & Whitlow, Paducah, Ky., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ALLEN, District Judge.

This action seeking enforcement of a lien claim in the amount of $157,900.00 was brought by the plaintiff, an Ohio corporation, against the defendant, Westvaco Corporation, a Delaware corporation referred to hereinafter as "Westvaco", the City of Wickliffe, Kentucky, referred to hereinafter as "Wickliffe", and the Chase Manhattan Bank, which is located in New York City; and against Rice Barton Corporation, hereinafter referred to as "R.B.", a Massachusetts corporation.

The amount sued for is in excess of $10,000 and there exists complete diversity of citizenship. Accordingly, jurisdiction is conferred upon this Court under Title 28 U.S.C. § 1332.

On July 11, 1967, Wickliffe, by ordinance enacted in accordance with Chapter 103 of Kentucky Revised Statutes, authorized the issuance of an industrial building revenue bond series. Pursuant to that ordinance, Wickliffe sold a $80,000,000 industrial building revenue bond (Series 1967) to finance the construction of an industrial plant largely within the city limits of Wickliffe or the boundaries of Ballard County, Kentucky, the plant to be leased to and operated by Westvaco.

The ordinance provides that the proceeds of the bond issue are to be used for the payment of the cost of construction of the project and the acquisition and installation of utility services comprising a part of the project and the payment for labor, services, materials and supplies used or furnished in connection with site improvement and for the cost of all real and personal property deemed necessary in connection with the project.

The ordinance defines the word "Project" as industrial buildings and related facilities owned by the City, including the real property acquired therefor and machinery, equipment and other facilities in connection therewith and any replacements, alterations or additions thereto constructed and acquired as provided by the lease agreement or subsequent lease thereof.

The Chase Manhattan Bank was appointed as Trustee under Article VIII of the Ordinance to distribute the proceeds of the bond issue at the direction of Wickliffe.

On September 7, 1967, Westvaco, acting as agent for Wickliffe, entered into a contract with R.B. for the purchase of a high speed paper machine to be installed in the industrial plant located in Wickliffe and Ballard County, Kentucky, for the sum of $5,714,281. Title to the machinery was to be vested in Westvaco or Wickliffe. Subsequently the price was increased to $7,254,180.83.

Sandusky furnished to R.B. pursuant to the latter's purchase orders rolls for use in the machine at an agreed price of $157,900.00, and no amount has been paid to Sandusky for the furnishing of these rolls. They are now all incorporated in the machinery installed in the building owned by Wickliffe and leased by Westvaco.

Plaintiff believed that it had furnished the last roll to R.B. on May 25, 1969, and filed its first notice of lien claim in July 1969 on that belief. However, R.B. was dissatisfied with three of the rolls which had been furnished to it by plaintiff and negotiations ensued between it and plaintiff resulting in the rejection and scrapping of one of the rolls and the substitution therefor of a new roll at no cost to R.B. which was sent by plaintiff to R.B. on November 23, 1969, and received by it on November 25, 1969. The defective roll and scrapped roll had been delivered to R.B.

in early November 1968 and hence more than one year had elapsed at the time the new roll was delivered.

It is admitted by the plaintiff through its witness Mr. Ranger, its Vice President, that although more than one year had elapsed since it had delivered to R. B. the defective press roll shell, it complied with R.B.'s request to replace the shell free of charge as though the request had occurred under a one year warranty which plaintiff furnished as to defects in workmanship and quality of all its products. It might be added at this time that apparently R.B. was a long time customer of plaintiff and had one or more of its officials on the Board of Directors of plaintiff, which may explain plaintiff's failure to demand more promptly payment of the amount due it from R.B. than was the case. The warranty given by plaintiff reads as follows:

"Should any of our material, within one (1) year after shipment be claimed to be latently or inherently defective in workmanship or quality, the claimant shall notify us at once and permit us reasonable opportunity to inspect for defects claimed. No material shall be returned for credit or replacement without full written instructions from us. Liability for defects shall be limited to those of workmanship of quality of material of items given normal and proper usage. We will not be liable for costs expended on any defective material furnished by us nor for any consequential damage by reason thereof."

The pulp and paper machine itself is a tremendous piece of equipment, being some 450 to 500 feet in length, 20 to 25 feet in width and 25 feet in height. It is admitted that the building in which it is housed was built specifically for the purpose of housing this machine, and it was estimated by one of the witnesses that it would take at least one year to dismantle it properly for reshipment in domestic trade. The machine weighs 3300 tons. It has fifteen different sections, all of which run at different speeds. It is bolted to the foundation by plates which are supported by steel columns which extend under the first floor on which the machine is located, to what the witness Maatsch referred to as the basement. The machine cannot be installed in the building until the building has come to a stable point. The machinery is bolted down to the foundation plates. The flooring which is required to carry the machine is made of reinforced steel and set in concrete. Allowance is made for the expansion of the machine by which is known as expansion joints.

One witness, Mr. Stafford, stated that he knew of no instance where such a machine had ever been dismantled, whereas Mr. Maatsch testified that he knew of one which had been in Ticonderoga, New York, and dismantled.

On July 14, 1969, R.B. filed a petition for arrangement under Title XI of the Bankruptcy Act in the United States District Court for the District of Massachusetts, and the contract of September 7, 1967, which it had entered into with Westvaco and Wickliffe was disaffirmed.

Subsequent to the disaffirmation, R.B. entered into a new contract with Westvaco and Wickliffe by which R.B. promised to furnish to Westvaco substantially the same machinery contracted for under the September 7, 1967 agreement in return for additional payments of $523,000.00 plus hourly labor charges. Total additional charges of $609,000.00 have been billed to Westvaco by R.B. since July 14, 1969, as a result of work done under this new contract.

On July 22, 1969, plaintiff filed with the Ballard County Clerk a notice of lien, copies of which were sent to Westvaco, R.B. and Wickliffe and received by them on July 24, 1969. The notice of lien purported to retain for plaintiff a lien on the realty at Wickliffe and made no mention of funds owing to R.B. from Wickliffe.

On October 10, 1969, plaintiff mailed to the Ballard County Clerk an amend-

ment of claim of lien. That notice of lien claims a lien upon the project and all machinery, structures, personal property and funds relating to the project. It further states that it is unable to designate the owner of any specific item of property related to the project.

On December 11, 1969, plaintiff filed with the Ballard County Clerk the second amendment to its statement of claim for lien which was received by the Clerk on December 12, 1969, and filed on the following date. This amendment claimed a lien on both the real estate and the funds in the hands of Wickliffe owing to R.B. The notice of claim of lien filed by plaintiff in December 1969 refers to the last furnishing of materials as having been accomplished on November 25, 1969. Attested copies of the lien statements dated July 22, 1969, and the amendment dated October 10, 1969, were mailed on October 21, 1969, to R.B. and Westvaco and received on October 23, 1969. Attested copies of the amendment dated December 10, 1969, were mailed to them on December 18, 1969, and received on December 22, 1969.

Also, plaintiff sent by two letters dated November 7, 1969, and January 8, 1970, to the Mayor of Wickliffe copies of the three lien statements referred to above. The first letter contained copies of the first two notices of lien statements and the second letter contained a copy of the lien notice of December 11, 1969.

Plaintiff has filed in the United States District Court for the District of Massachusetts on October 10, 1969, its proof of claim stating that R.B. is indebted to it in the amount of $201,717.-66, of which $157,659.00 is for the shells installed in the Wickliffe plant.

A stipulation was entered into on January 21, 1970, in the bankruptcy proceeding whereby plaintiff was allowed to institute suit in either the Kentucky Circuit Court or in the United States District Court to enforce any inchoate lien which it might have to the proceeds of the industrial revenue bonds of Wickliffe, Kentucky. The stipulation specifi-

cally provided that it was not to be construed as a consent to or waiver by R.B. of objections to any assertion by plaintiff that it had any security interest in the machinery or components thereof which was delivered to Wickliffe by R.B. pursuant to its renegotiated contract with Westvaco acting as agent for Wickliffe.

Several interesting legal questions are presented in this action. To understand them more fully, reference must be had to applicable Kentucky statutes. KRS 376.195 through 376.260 comprises the statutes relating to liens for labor, materials or supplies furnished on public improvements. KRS 376.195 defines labor, materials or supplies furnished on public improvements. KRS 376.195 defines labor, materials and supplies in a very broad fashion as may be seen by an examination of Subsection (2) of that statute relating to materials. That subsection reads as follows:

"(2) 'Materials' includes all materials of every kind or character used in the public improvement which shall remain as a part of the completed improvement, and all the materials substantially consumed or the value thereof substantially destroyed in making the public improvement, including explosives, gasoline, oil, grease, form lumber and other similar articles;"

KRS 376.210(1) gives to any person furnishing materials and performing labor or furnishing supplies for public improvement a lien on the funds owing to the contractor from the owner of the property improved where the property is owned by the state or by the county or city or any subdivision of the state. That section provides:

"(1) Any person, firm or corporation who performs labor or furnishes materials or supplies for the construction, maintenance, or improvement of any canal, railroad, bridge, public highway or other public improvement in this state by contract, express or implied, with the owner thereof or by subcontract thereunder shall have a

lien thereon, and upon all the property and the franchises of the owner, except property owned by the state, a subdivision or agency thereof, or by any county or city. If the property improved is owned by the state or by any subdivision or agency thereof, or by any county or city, the person furnishing the labor, materials or supplies shall have a lien on the funds due the contractor from the owner of the property improved. Except as provided in section 376.195, the lien shall be for the full contract price of the labor, materials and supplies furnished, and shall be superior to all other liens thereafter created.

Subsection (2) of KRS 376.210 provides as follows:

"(2) Any person undertaking or expecting to furnish labor, materials or supplies as provided in this section may acquire the lien herein provided by filing in the clerk's office of each county in which he has undertaken to furnish labor, materials or supplies, [except as hereinafter provided], a statement in writing that he has undertaken and expects to furnish labor, materials or supplies and the price at which they are to be furnished, and the lien for labor material or supplies furnished thereafter shall relate back and take effect from the date of the filing of the statement. In all cases of original construction the liens shall be prior to all liens theretofore or thereafter created on the part so constructed and on no other part."

Subsection (3) of KRS 376.210 provides that the lien shall attach only to any unpaid balance due the contractor from the time an *attested copy of the lien statement is delivered to the owner or the owner's authorized agent.*

KRS 376.230(1) provides for dissolution of the lien provided for in KRS 376.210 unless within thirty days after the last day of the last month on which any labor or materials were supplied the person furnishing them files a statement with the county clerk setting forth the amount for which the lien is claimed and the name of the improvement upon which it is claimed.

KRS 376.240 provides in substance that the lien upon funds to the contractor from the public authority is perfected by filing the statement referred to in KRS 376.230(2) in the county clerk's office and the delivery of an attested copy to the public authority and the filing with the public authority of a signed copy of the letter addressed to the contractor or subcontractor showing that an attested copy of the lien statement has been sent by the claimant to the contractor or subcontractor by registered mail. Upon the doing of these acts, the claimant is to have a lien superior to any subsequent lien perfected on any unpaid balance due the contractor.

KRS 376.250(2) provides that unless the contractor within thirty days from date of delivery of an attested copy of the statement of lien required by KRS 376.230 files with the public authority a written protest as to the correctness of the amount due the lien claimant or the liability of the suit for payment thereof, the amount withheld shall be paid by the public authority to the lien claimant and charged to the account of the contractor, which will in turn operate as a pro tanto release of the public authority from any claim of the contractor under the contract for the amount so paid. This section also provides that the filing in the county clerk's office of the statement of lien is constructive notice to the contractor of its filing.

■ The first objection raised by the defendants to the validity of the plaintiff's alleged lien is that the property in question, to-wit: the paper producing machine, is not lienable. Reliance is had on the decision of The Honorable Henry L. Brooks in the case of Heat 'N 'Eat Brands, Inc. v. Scoggan, 174 F.Supp. 598 (D.C.W.D.Ky.1959), affirmed by the Sixth Circuit Court of Appeals in 278 F.2d 488 (1960). That case pertains to a lien which was alleged under KRS 376.010 and held that a boiler which was installed on the leased premises was not

444

lienable. The Court holds that *Heat 'N· 'Eat* is not applicable to the case at bar since it was decided under KRS 376.010 which contains no express definition of the word "materials" in contrast to KRS 376.195 which manifestly intends that all materials whether permanently affixed to the realty or consumed on public projects are considered as lienable items.

. In addition to the explicit language of KRS 376.195(2), the Court takes note of the case of Menne v. American Radiator Co., 150 Ky. 151, 150 S.W. 24 (Ky.1912). In that. case the Court of Appeals held that a boiler which was used in heating a residence was a material for repairing the house, a ˙fixture and a machine. Also, that it was furnished for the improvement of the property and, therefore, lienable under Section 2463 of the Kentucky Statutes.

■■ The next contention of the defendants is that plaintiff is not entitled to a lien under the provisions of KRS 376.195, et seq., because it did not comply with the provisions thereof. One contention which can be rather summarily disposed of is that KRS 376.210(2) was not complied with and, therefore, plaintiff has no lien. Examination of that statute and of the case of Grigsbey v. Lexington & Eastern Railway Co., 150 Ky. 557, 150 S.W. 687, reveals that the law is to the contrary. The *Grigsbey* case makes it clear that KRS 376.210(2) is permissive and anticipatory in nature. *Grigsbey* also makes it clear that the intention of Subsection (2) of KRS 376.-210 is to afford a priority to any mechanic's lien claimant who filed such a preliminary notice of lien over· those lien claimants who prefer to wait and file their notice of claim under KRS 376.-230(1), which must be done within thirty days after the last day of the last month on which any labor, materials, or supplies were furnished. As pointed out in Grigsbey, the anticipatory notice of lien relates only to priorities and does not bar the lien claimant who files his notice of lien after completion of his contract pursuant to KRS 376.230.

■ A more serious question . is raised as to whether or not under Kentucky lien law plaintiff timely filed its notice of lien. The leading case is that of City of Ashland v. Ben Williamson & Co., (1943) 294 Ky. 446, 171 S.W.2d 968. In that case the City of Ashland entered into a contract with one Payne to construct an addition to its waterworks. Payne subcontracted the plumbing and heating construction to a plumbing company and the electrical work to J. C. Williams Electric Co. Some of the materials purchased by Payne in performance of the contract were bought from appellee and also by the plumbing company, the plumbing company purchases being authorized by Payne. The contract was completed in either December 1930 or late in January 1931.

A final certificate of estimate was issued December 30, 1930. It was insisted, however, that notwithstanding the final estimate the contract was not completed until January 30, 1931, which would make the lien notices timely. The president of the plumbing company testified that there were some defective valves and trouble with gas fumes from the radiator and that the last thing he put in it was a sillcock which was required by the contract but which he had forgotten to install. He said that he was continuously on the job until late in January 1931. The lower court and the appellate court both held that the installation of sillcock and other matters testified to by Lewis were a part of and included in the main contract rather than minor repairs made for the purpose of extending time of notice and that, therefore, the notice of lien was timely filed in this connection.

Defendants rely on the latter portion of *City of Ashland* pertaining to the electrical company. There the electrical company filed notice of lien on March 9, 1931, and two days before gave notice to the city. The proof showed that the city had been using the water system ever since December 10, 1930, and that the only work done by the electrical company was on February 1, 1931, which last-

ed for about three hours and for which no charge was made. This work was done only because of the settling of filled ground and was not due to any faulty work in the construction. The electrical company witness did say that the repairs were done under the year's guarantee of its work.

The Court of Appeals held that as to the electrical company the work was completed on December 10, 1930, and that the notice of lien was not timely filed. The Court did state on page 458 of Volume 294 Kentucky Reports, 171 S.W.2d 968, that work done or repairs made pursuant to a time guarantee cannot extend the time of notice of lien.

If the last paragraph on page 458, 171 S.W.2d 968, is controlling, then defendants must prevail in this action. The Court believes that the Court of Appeals opinion as to the electrical company was based in part on the theory that the work had been completed in December and no complaint made and that the repairs made in February were not due to any faulty work on the part of the complainant or to lack of completion of the contract. In the instant case the Court is of the opinion that the furnishing of the new shell in November 1969 was due to faulty work on the part of the plaintiff and that its contract in fact was not completed until the new shell was installed.

The case of Akers & Co. v. Weil, 251 Ky. 689, 65 S.W.2d 712, 933, is authority for the proposition that where a contract to install materials in a building was finished on April 20 but the owner refused to accept the work since the doors supplied were not for the type called for in the contract and new doors were substituted, the period for filing the notice of lien was extended by the new work which was done. The Court believes that the facts in this case bring it within the doctrine set forth in *Akers* and also within the holding enunciated in *City of Ashland* on pages 452 and 453, 171 S.W.2d 968, thereof.

We come now to the contention of the defendants that the intervening bankruptcy of R.B. on July 14, 1969, bars the plaintiff from recovery. In this connection defendants rely upon the proposition that the debtor-in-possession is vested with all the rights of a bona fide purchaser and/or judgment lien creditor pursuant to Section 67(c)(1)(B) of the Bankruptcy Act. Defendants then point to the case of Walker v. Valley Plumbing, Inc., 370 S. W.2d 136 (Ky.1963). Walker holds that bona fide purchasers of real estate upon which a new home has been built are not subject to having the real estate encumbered by a valid lien by a subcontractor to the builder when that subcontractor returns some six months after the purchase of the home has been completed and switches the cold and hot water connections which were erroneously located and then files a notice of lien shortly thereafter, the purchasers having no actual knowledge that the contractor had not paid the subcontractor for his plumbing work prior to their purchase of the home.

The Court is of the opinion that the language of 67(c)(1) and (c)(1)(B) of the Bankruptcy Act, 11 U.S.C. § 107(c)(1) and (c)(1)(B) which are as follows are controlling:

"(c)(1) The following liens shall be invalid against the trustee:

\* \* \* \* \* \*

"(B) every statutory lien which is not perfected or enforceable at the date of bankruptcy against one acquiring the rights of a bona fide purchaser from the debtor on that date, whether or not such purchaser exists: Provided, That where a statutory lien is not invalid at the date of bankruptcy against the trustee under subdivision c of section 70 of this Act [11 U. S.C. § 110(c)] and is required by applicable lien law to be perfected in order to be valid against a subsequent bona fide purchaser, such a lien may nevertheless be valid under this subdivision if perfected within the time

permitted by and in accordance with the requirements of such law * * *."

This provision of the Bankruptcy Act, Title 11 U.S.C. § 107(c)(1)(B), by reason of a 1966 amendment was enacted in place of 11 U.S.C. § 107(b) which provided in substance that statutory liens in favor of mechanics created by the laws of any state may be valid against the trustee. Where by such laws liens are required to be perfected and arise but are not perfected before bankruptcy, they nevertheless may be valid if perfected within the time permitted by the lien laws.

In the case of In Re Chesterfield Developers, Inc., 285 F.Supp. 689 (D.C.S. D.N.Y.1968), District Judge Tenney on page 692 stated as follows:

"One other point warrants mention. Petitioner argues that the purpose of the 1966 amendments was to change the law 'drastically * * * by extending to mechanic's liens the disqualifying provisions of § 67c which previously applied only to liens on personalty.' Brief for Petitioner at 7. To the contrary, it would appear that the legislative intent was to provide for greater validity of liens. As stated by Professor King, 'under former § 67c, almost all statutory liens were effectively invalidated, except those that existed on real property. Under present § 67c * * * statutory liens, without reference to the type of property concerned, *will be mostly effective against the trustee.'* King, Post-Bankruptcy Perfection of Statutory Liens, 72 Com.L.J. 346, 347 (1967) (footnotes omitted and emphasis added)."

Finally the Court is of the opinion that Congress did not intend to defeat the claim of a mechanic's lienholder where that claim was perfected after bankruptcy by the delivery of materials during the post-bankruptcy period.

Defendants raise one other objection to plaintiff's recovery in this action. The objection is to the effect that there are no funds remaining in the hands of Wickliffe due to R.B. *City of Ashland,* supra, completely rebuts that defense. See pages 454 to 456 of Volume 294 Kentucky Reports, 171 S.W.2d 968.

In conclusion, it is the opinion of the Court that plaintiff is entitled to a recovery in the amount of $157,659.00. As the Court understands it, that recovery can be paid out of the funds in the hands of the debtor-in-possession in the bankruptcy proceedings. So much of those funds as are in the hands of the debtor-in-possession should be segregated to protect the interest of the plaintiff. It is believed that the District Court for the United States District Court of Massachusetts will honor the desires of this Court in that respect subject, of course, to the right of the parties to appeal.

The alternative to this proposal would be to award a direct judgment against Wickliffe which in turn could recover from Westvaco. This was the procedure followed in *City of Ashland,* supra. The Court does not believe that it is proper procedure here since the funds owing by Wickliffe and Westvaco to R.B. have been paid over to the debtor-in-possession.

As to Chase Manhattan Bank, the Court is of the opinion that there is no liability on its part. It merely acted as a distributing agent for Wickliffe and apparently has no funds in its hands at this time belonging to Wickliffe or Westvaco or to be distributed on their behalf to R.B.

Counsel for plaintiff may tender a judgment in accordance with the Findings of Fact and Conclusions of Law.