**SANDUSKY FOUNDRY AND MACHINE COMPANY, Plaintiff-Appellee,**

v.

**CITY OF WICKLIFFE et al., Defendants-Appellants.**

**No. 73-1104.**

United States Court of Appeals, Sixth Circuit.

Argued June 15, 1973.

Decided Aug 24, 1973.

James W. McDonnell, Jr., Memphis, Tenn., for defendants-appellants; Canada, Russell & Turner, Memphis, Tenn., and Wheeler & Boaz, Paducah, Ky., on brief.

Edgar A. Zingman and A. Wallace Grafton, Jr., Wyatt, Grafton & Sloss, Louisville, Ky., William L. Shadoan, Wickliffe, Ky., Taft, Stettinius & Hollister, Cincinnati, Ohio, for plaintiff-appellee.

Before PHILLIPS, Chief Judge, EDWARDS, Circuit Judge, and NEESE,\* District Judge.

NEESE, District Judge.

This action for the enforcement, under Kentucky law, of a claimed materialman's lien, resulted in a judgment for the appellee Sandusky Foundry and Machine Company (Sandusky) against the appellants City of Wickliffe (City) and Westvaco Corporation (Westvaco) for $130,054 with interest from December 12, 1969. An appeal was taken by the appellants. We affirm.

The simplified facts are that Sandusky contracted with Rice Barton Corporation (R-B) to fabricate for $157,659 elements (rollers) of a 3,300-ton papermaking machine, costing about $7,-000,000, which R-B had agreed on September 7, 1967 to manufacture to

---

\* The Honorable C. G. Neese, United States District Judge for the Eastern District of Tennessee, sitting by designation.

specifications and deliver to Westvaco for its use in a plant to be constructed on realty owned by the City and to be leased for operations to Westvaco. This was a public improvement project, financed by the issuance and sale by the City, pursuant to a Kentucky statute, of about $80,000,000 in industrial building revenue bonds.

The major part of Sandusky's contract was completed on November 5, 1968. On July 14, 1969, before the completion by R-B of the prime contract with Westvaco, acting as agent for the City, R-B petitioned for an arrangement under the Bankruptcy Act, chapter XI, in the District Court for Massachusetts. The original contract between R-B and the City and Westvaco was disaffirmed, but another contract was executed, which called for the same machinery and an additional payment to R-B. By stipulation, Sandusky was permitted to file this action to enforce an inchoate lien which it had to the proceeds of the bonds in the City's hands. R-B afterward billed the appellants for $609,000 under the new contract.

R-B contended that one of the rollers fabricated and delivered by Sandusky was not to specification and, although the warranty period thereon had expired, Sandusky agreed to substitute a new roller (replacement shell) at no cost to R-B. This replacement part was received by R-B in Wickliffe on November 25, 1969.

Sandusky filed its first notice of a lien claim on July 22, 1969. An amended claim was filed on October 10, 1969. Both of these notices were filed more than 30 days after November 5, 1968. No payment under the contract between Sandusky and R-B was made, and on December 13, 1969 Sandusky filed with the appropriate official a second amended claim of a materialman's lien against funds in the hands of the City owing to R-B, stating that the last furnishing of materials for the project had been accomplished on November 25, 1969. Attested copies of such amended claim were sent to the City by Sandusky by letter of January 8, 1970. R-B, the prime contractor, did not, within 30 days from December 13, 1969, file with the City a written protest putting in issue the liability of the fund due R-B in the hands of the City.

■■ The appellants contend that the District Court erred in holding that a statement of the lien was filed with the appropriate official within the time required by KRS 376.230.[1] The District Court properly construed the broad lan-

---

I. 376.230 [2494] Lien dissolved unless statement filed with county clerk within thirty days; form of statement; duty and fees of clerk.

(1) The lien provided for in KRS 376.210 shall be dissolved unless the person who furnishes the labor, materials or supplies shall, within thirty days after the last day of the last month in which any labor, materials or supplies were furnished, file in the county clerk's office of each county in which labor, materials or supplies were furnished, except as hereinafter provided, a statement in writing verified by affidavit of the claimant or his authorized agent or attorney, setting forth the amount due for which the lien is claimed and the name of the canal, railroad, bridge, public highway or other public improvement upon which it is claimed.

(2) In all cases where a lien is claimed for labor, materials or supplies furnished for the improvement of any bridge, public highway or other public property owned by the state or by any county or city, the statement of lien shall be filed only in the county clerk's office of the county in which the seat of government of the owner of the property is located.

(3) The county clerk, upon the filing of the statement, shall make an abstract and entry thereof as now provided by law in case of mechanics' liens in the same book used for that purpose, and shall make proper index thereof. The clerk shall be paid one dollar by the party filing the claim, and twenty-five cents for attesting any copy of the lien statement. If he is required to make the copy, he may make an additional charge as provided by law. All of these charges may be recovered by the lien claimant as costs from the party and out of the fund against which the claim is filed.

guage of KRS 376.195(2)[2] as encompassing within the definition of "materials" the rollers supplied by Sandusky for this public improvement. KRS 376.210[3] clearly gave to Sandusky, for supplying such materials, a lien " * * * on the funds due the contractor [R-B] from the owner of the property involved [City] * * * ," which such lien attached only to any unpaid balance due the contractor from the time an attested copy of the lien statement was delivered to the City or its agent. KRS 376.210(3). The City held sufficient funds owing to R-B on January 8, 1970, to satisfy Sandusky's lien. The District Court found factually that Sandusky's contract with R-B was not completed until November 25, 1969, due to faulty work, citing Akers &

Co. v. Weil, 251 Ky. 689, 65 S.W.2d 712 (1933), and City of Ashland v. Ben Williamson & Co., 294 Ky. 446, 171 S.W.2d 968 (1943), and that finding is not clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure.

In *Akers* it was stated with reference to a mechanic's lien:

* * * In Henry Koehler & Co. v. Hines, 185 Ky. 270, 214 S.W. 906, upon the authority of several other cases, it is declared that the time for giving notice of a lien of this class cannot be prolonged by furnishing labor or material that is trivial and unnecessary for the completion of the contract. That is good law. But the facts of that case are different from

---

2. 376.195 Definitions for KRS 376.195 and 376.210.

As used in this section and in subsection (1) of KRS 376.210:

(2) "Materials" * * * includes all materials of every kind or character used in the public improvement which shall remain as a part of the completed improvement, and all the materials substantially consumed or the value thereof substantially destroyed in making the public improvement, including explosives, gasoline, oil, grease, form lumber and other similar articles * * *.

3. 376.210 [2492] Lien for labor, material or supplies furnished on public improvement; assertion, filing and enforcement.

(1) Any person, firm or corporation who performs labor or furnishes materials or supplies for the construction, maintenance, or improvement of any canal, railroad, bridge, public highway or other public improvement in this state by contract, express or implied, with the owner thereof or by the subcontract thereunder shall have a lien thereon, and upon all the property and franchises of the owner, except property owned by the state, a subdivision or agency thereof, or by any county or city. If the property improved is owned by the state or by any subdivision or agency thereof, or by any county or city, the person furnishing the labor, materials or supplies shall have a lien on the funds due the contractor from the owner of the property improved. Except as provided in section 376.195, the lien shall be for the full contract price of the labor, materials and supplies furnished,

and shall be superior to all other liens thereafter created.

(1966 c 255, § 262. Eff. 6–16–66)

(2) Any person undertaking or expecting to furnish labor, materials or supplies as provided in this section may acquire the lien herein provided by filing in the clerk's office of each county in which he has undertaken to furnish labor, materials or supplies, except as provided in subsection (3), a statement in writing that he has undertaken and expects to furnish labor, materials or supplies and the price at which they are to be furnished, and the lien for labor, material or supplies furnished thereafter shall relate back and take effect from the date of the filing of the statement. In all cases of original construction the liens shall be prior to all liens theretofore or thereafter created on the part so constructed and on no other part.

(1966 c 255, § 262. Eff. 6–16–66)

(3) In all cases where the labor, materials, or supplies are furnished for the improvement of any public highway or other public property owned by the state or by any county or city, the statement shall be filed in the county clerk's office of the county in which is located the seat of government of the owner of the property improved, and the lien shall attach only to any unpaid balance due the contractor for the improvement from the time a copy of the statement, attested by the county clerk, is delivered to the owner or the owner's authorized agent with whom the contract for improving the public highway or other public property was made.

(1966 c 255, § 262. Eff. 6–16–66)

those here, in that it appeared there that the sole purpose for which the material had been furnished was to bring the claim under the statute, as it was not necessary. Here it is clearly shown that the claimant's work and materials had not been accepted. It realized that its contract had not been complied with, and, upon the demand of the owner, went ahead and completed the job in an acceptable manner. This was necessary in order for the contractor to recover under his contract, and it was all in good faith. It had the effect of extending the time for claiming the lien. * * *

251 Ky. at 690, 65 S.W.2d at 712 *Akers* is cited in *City of Ashland* for the proposition that, where a subcontractor supplied, after the expiration of the lien period, materials which were included and specified in the contract but had been overlooked or forgotten and were necessary to complete the contract, a materialman's lien was valid. 294 Ky. at 452–453, 171 S.W.2d 968.

The appellants urge also that, after the filing by R-B of the aforementioned arrangement in bankruptcy, no funds remained in the City's hands due R-B against which Sandusky could enforce a lien because such funds had theretofore passed into the hands of the receivers in bankruptcy. The language of the Bankruptcy Act, 67(c), (1)(B), 11 U.S.C. § 107(c)(1)(B), reveals that there is no merit to this argument. The statute provides:

§ 107. *Liens and fraudulent transfers*

* * * * * *

(c)(1) The following liens shall be invalid against the trustee:

* * * * * *

(B) every statutory lien which is not perfected or enforceable at the date of bankruptcy against one acquiring the rights of a bona fide purchaser from the debtor on that date, whether or not such purchaser exists: *Provided, That where a statutory lien is not invalid at the date of bankruptcy against the trustee under subdivision (c) of this Act* [11 U.S.C. § 110(c)] *and is required by applicable lien law to be perfected in order to be valid against a subsequent bona fide purchaser, such a lien may nevertheless be valid under this subsection if perfected within the time permitted by and in accordance with the requirements of such law * * *.* (Emphasis supplied.)

Under the Kentucky Public Improvement Lien Law, KRS 376.195 et seq., no judgment creditor, unsatisfied execution creditor or contract lien creditor is given any right against the public authority. Therefore, under the first proviso of 11 U.S.C. § 107(c)(1)(B), Sandusky's statutory lien was not invalidated by the existence of any superior creditors at the date of bankruptcy under 11 U.S.C. § 110(c). Under the Kentucky Public Improvement Lien Law, *supra*, the perfected materialman's lien of Sandusky was superior to all other claimants except earlier perfected claims of other materialmen, of which there were none. Under the factual finding of the District Court, Sandusky's lien was perfected within the time permitted by and in accordance with the requirements of such law. For such reasons, Sandusky's lien is valid against the receivers, notwithstanding other provisions of 11 U.S.C. § 107(c)(1)(B). Further, the City and Westvaco had no standing to raise this defense herein, because R-B failed, within 30 days from the delivery of an attested copy of the statement of Sandusky's lien, as required by KRS 376.230, to file with the City a written protest putting in issue the liability of the fund in the City's hands for payment of Sandusky's lien. KRS 376.250(2).[4]

4. Unless the contractor, within thirty days from the date of the delivery of the attested copy, files with the public authority a written protest putting in issue the correctness of the amount due the lien claimant or the liability of the

Finally, there was no error in the District Court's denying the appellants' motion to reopen the proof for the introduction of an additional exhibit. Reopening the case for further proof is a matter which addresses itself to the wide discretion of the District Court, Kitchen v. United States, 95 U.S.App.D. C. 277, 221 F.(2d) 832, 835[5] (1955), and we find no abuse of discretion here.

The judgment of the District Court is affirmed.

fund for payment thereof, the amount withheld shall be paid by the public authority to the lien claimant and charged to the account of the contractor * * *. KRS 376.250(2).