## Ideal Supplies Company v. Underhill, et al.

(Decided March 26, 1926.)

### Appeal from Kenton Circuit Court.

1. Mortgages—"Notice" in Statute Giving Lien Priority Over Mortgage, Executed Without Notice and Recorded After Filing of Statutory Statement by Lienor, Includes Both Actual and Constructive Notice (Ky. Stats., Section 2463).—Under Ky. Stats., section 2463, providing that materialman's lien shall not take precedence over duly recorded bona fide mortgage, executed without notice, unless lienor files statement before recording of mortgage that he has furnished or expects to furnish materials, "notice" includes actual, as well as constructive, notice, though statute omits word "actual" in prior statutes.

2. Mortgages—Lien of Materialman Filing Statement After Materials were Furnished Held Not Entitled to Precedence Over Mortgage Theretofore Executed and Recorded, Though Mortgagee Knew Material was Being Furnished and Money Borrowed to Pay Therefor (Ky. Stats., Section 2463).—Lien of Materialman not filing statement of material furnished or intent to furnish material, under Ky. Stats., section 2463, until after it had finished doing so, held not entitled to precedence over mortgage theretofore executed and recorded without actual or constructive notice of materialman's claim; mortgagee's knowledge that material was being furnished and money borrowed to pay therefor not putting it on inquiry, while claimant could not complain of mortgagee's trustfulness or lack of diligence to protect claimant.

MYERS & HOWARD for appellant.

BARBOUR & BASSMANN for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—
Affirming.

The Kentucky Loan & Building Association No. 1 of Newport, Kentucky, sued Elmer C. Underhill to foreclose a mortgage on a house and lot in Newport. The Ideal Supplies Company asserted a materialman's lien on the property. This was sold and the proceeds realized were insufficient to satisfy both liens. In the judgment priority was given the association and the company appeals. Aside from Underhill, further reference to the parties will be made in the names of the "association" and the "company."

An agreed stipulation of facts was filed from which it appears that the company began furnishing material on March 6, 1922, and continued to do so until September

27th of that year, at which time Underhill was indebted to it in a balance of $182.67. It did not file any statement or material furnished or of its intention to furnish material to Underhill as provided in section 2463, Kentucky Statutes, prior to September 27th, but did so later, within the time provided by the statute.

In the month of July, 1922, Underhill negotiated a loan of $5,000.00 with the association for the purpose of paying for the construction of the building, this to be advanced in installments as the work progressed. Upon inspection and report by its appraisement committee, the association advanced him $2,000.00 on July 17th; $2,500.00 on August 28th, and $500.00 on September 4th. On September 2nd Underhill and his wife properly executed, acknowledged and delivered to it a mortgage on the property for the full amount of the loan and this was recorded on the same day. At the time of the first advancement the material theretofore furnished by the company had been used in the erection of the building and the house was then roofed or ready to be roofed, and the association knew that the materials were being used in its construction, and that Underhill was procuring the money to pay for material and labor, and at the time he represented that he would pay off all such claims. It relied on this representation, and made no agreement to pay such claims or see that they were paid. It had no actual notice of any unpaid claim and did not know who furnished the material or who was performing the labor, and made no inquiry to ascertain those facts, and did not learn of the company's claim until its statement was filed in the clerk's office.

It is argued for the company that under these circumstances the association was put upon inquiry, which, if pursued, would have led to knowledge of the facts and that this is equivalent to actual notice and as, under the statute, upon filing the statement the lien dates back to the time the furnishing of material began, its lien should have been given priority. This view of the law is disputed by the association, which also contends that under our present statute, section 2463, constructive notice only is contemplated and that actual notice is not sufficient to give priority to the materialman. So far as applicable this section reads:

"And provided that such lien shall not take precedence of a mortgage or other contract, lien or

*bona fide* conveyance for value without notice, duly recorded or lodged for record according to law, unless person claiming such prior lien shall before the recording of such mortgage or other contract, lien or conveyance, have filed in the clerk's office of the county court of the county wherein he shall have performed labor or furnished materials, or shall expect to perform labor or furnish materials, as aforesaid, a statement showing that he has performed or furnished, or that he expects to furnish such labor or materials, and the amount in full thereof, and his lien shall not as against the holder of said mortgage, or other contract, lien or other conveyance, exceed the amount of the lien claimed or expected to be claimed as set forth in such statement. . . . ''

Considering the second question raised by the association, it will be observed that a mortgage or other contract lien or *bona fide* conveyance for value without notice duly recorded or lodged for record, has precedence over a prior claim for labor or material furnished, unless before such recordation the claimant files the statutory statement showing that he has furnished material or labor or that he intends to do so. This statute is somewhat different from former acts which form the basis of a number of our decisions.

A history of our lien laws is given in Foushee v. Grigsby, 75 Ky. 75. From this it appears that prior to 1858, such liens were controlled by local laws which generally gave them precedence over subsequent mortgages and conveyances of every character. This was changed by the act of 1858, which appears in substantially the same form in Meyers' Supplement and the General Statutes, the 14th section of which act provided:

"The liens declared in this chapter shall not be effectual or valid against a *bona fide* purchaser for a valuable consideration without notice, actual or constructive, but if the purchaser receives notice of the lien before the payment of the whole of the purchase money, the lien shall operate on the purchase money remaining unpaid."

The evident purpose of the act was to protect innocent purchasers, provision being made for filing a state-

ment in the clerk's office by materialmen or laborers after the completion of the work. But there was no way of giving constructive notice until after the work was completed or the laborers ceased to perform services, except by a suit creating a *lis pendens,* the rights of such claimants being protected if the purchaser had "actual notice" of the claim. In the Foushee case the court defined "actual notice" and that definition has been consistently followed by this court.

In 1893 the legislature enacted a new law (Laws 1891-3, chapter 151) upon the subject which was in effect the same as the former local laws. This was again changed in 1896 (Acts 1896, chapter 29), when the present statute was passed. In it provision is made for constructive notice before furnishing the material or labor as well as after this has ceased, but the word "actual" is omitted. From this is is claimed that it was the intention of the legislature to provide only for constructive notice.

But in quite a number of opinions written since the enactment of this statute the court has applied the words "without notice" as referring to both "actual" and "constructive" notice. Harriss, Assignee v. Gardner, 24 L. R. 103; Scheas v. Boston & Paris, 125 Ky. 535; First National Bank v. Chowning Electric Co,. 142 Ky. 624; Voss v. Home Loan & Building Assn., 167 Ky. 231; Ky. L. M. & W. Co. v. Ky. T. S. B. & T. Co., 184 Ky. 244. It is argued, however, that those opinions followed that of Foushee v. Grigsby without the attention of the court being called to the change in the statute, and that the question is still open for consideration; that as full protection is afforded mechanics and materialmen by the provision for constructive notice, both before and after furnishing the material or performing the labor, the legislature designedly omitted the word "actual" as used in the former statute, thereby intending to provide for constructive notice only, and that as such liens exist only by statute, to construe it otherwise would be the creation of a lien by reading the word "actual" into the act. We cannot assent to this. True, the claimant's lien exists only by virtue of the statute. It cannot be created by actual notice, but only attaches on filing the statement within the time provided; however, when this is done it relates back to the time he began to furnish material and labor. If in the meantime a *bona fide* conveyance or mortgage has been executed without notice and recorded, it will

have precedence over such lien, but will not otherwise affect its validity, and to be entitled to priority the mortgage or conveyance must be *bona fide* and without notice. If the purchaser or creditor knows that there are unpaid claims of this character, and further knows that the owner or contractor is unable to pay such claims, or that the claimant intends filing a lien therefor, it is hard to see how he can be said to act *bona fide* in entering into a transaction that will destroy such lien. And as notice has been uniformly recognized as affecting the *bona fides* of such transactions in so many recent opinions, we will not assume that this phase of the case has not been considered before.

(2)   However, under the facts of this case, the association not only had no actual notice of the company's claim, but also, it was not in possession of any facts to put it on inquiry. The association knew that the building was under construction; that some persons were furnishing material and others were performing labor, and that Underhill was procuring money from it with which to pay them. But Underhill's reputation is not attacked, and the above facts did not indicate that he was not paying the claims as they accrued or that he was unable to do so, and did not place the burden of seeing the payments made upon the association or put it upon inquiry. The "company" either trusted Underhill to pay its claim or carelessly failed to file a statement for its own protection. It can hardly complain that the association was also trustful or urge that it should have exercised higher diligence for the protection of the claimant than it was exercising in its own behalf, and its after acquired lien cannot take precedence of the mortgage thus executed, a conclusion fully supported by the authorities quoted, *supra*.

Ky. L. M. Co. v. Ky. T. S. S. B. & T. Co., 184 Ky. 244, is relied on by appellee as establishing a different principle, and detached portions of the opinion may lend color to that contention. It is too long to quote here, but when read as a whole and considered in the light of the facts there appearing, it is patent that it was not intended to conflict with Foushee v. Grigsby, Scheas v. Boston & Paris, and other cases cited, *supra*. In that case Wright, who was confessedly insolvent, had purchased a lot for $800.00, paying only $50.00 of the purchase money, and had commenced the construction of a building thereon. At this juncture he negotiated a loan with the bank for

$2,500.00 on an installment note secured by mortgage on the property. The bank appraised the naked lot at $700.00, and with the contemplated improvements at $3,500.00. It was agreed that the $2,500.00 was to be deposited to Wright's credit on an account marked "special." That the bank was to ascertain and pay off all liens on the property and its own preliminary expenses, and that the remainder should be paid out by the bank on Wright's checks, but only on construction bills endorsed by him. After paying the liens and preliminary expenses and with full knowledge of the construction in progress, the bank later paid Wright on his personal account two checks for the sums of $350.00 and $400.00, respectively, and Wright absconded. The bank credited the remainder of the account on its note. In a contest between it and the materialmen who had filed subsequent but no preliminary statements, it was held that the latter had a superior lien to the extent of the $750.00, though the bank was given priority as to the remainder. It thus clearly appears that the contract was made for the benefit of the mechanics and materialmen, and having assumed a contractual liability for their benefit, it became the duty of the bank to ascertain if there were any unpaid claims before it diverted the funds in its hands to any other purpose. When thus construed it will be observed that this opinion was not intended to be a departure from the established rule.

Wherefore, perceiving no error, the judgment is affirmed.