## Collier et al. v. Dillon

May 23, 1950.

Rehearing denied June 23, 1950.

Scott Miller, Judge.

Wyatt, Grafton & Grafton and Louis Lusky for appellants.

Martin J. Duffy, Jr., for appellee.

JUDGE CAMMACK—Reversing.

This case involved the priority of a second mortgage held by the appellants and a mechanic's lien asserted by the appellee, David Dillon, on a lot and a partially completed house thereon. The appeal is from a judgment granting the mechanic's lien priority.

The controversy may be better understood by a brief review of the facts leading up to the filing of the action. The property in question was Lot 14 in Meadow View Estates Subdivision, which belonged to Mr. and Mrs. Marvin Alford. In August, 1947, Dillon began the construction of a house on the lot. Under the plans and specifications he was to submit a detailed estimate on the value of the materials placed in permanent position and the work performed on the second day of each month. This amount, less 10 per cent, was to be paid to

him by the 10th of each month. In October, 1947, the Alfords obtained a commitment for a $14,000 construction loan from the Greater Louisville First Federal Savings & Loan Association to help finance the construction of the house. A first mortgage was given the Association and $4,500 was advanced to the Alfords. Dillon received $2,500 of that amount and the remaining $2,000 was paid to a third party with Dillon's express consent and approval. By the end of 1947 the Alfords were $7,000 in arrears in their payments to Dillon. However, Dillon had taken no steps to assert a mechhanic's lien, under KRS 376.010(2).

During the latter part of December, 1947, the Colliers made a contract with the Alfords to purchase the completed house on Lot 14 for $26,000. They made a down payment of $5,000. This amount was represented by the purchase price of another lot which the Colliers had purchased from the Alfords, the title to which was imperfect, and a cash payment of $1,500. On February 2, 1948, the contract between the Alfords and the Colliers was recorded. In order to protect the down payment the Alfords gave the Colliers a mortage on Lot 14. This mortgage was recorded February 7th. In March, 1948, the Alfords and Dillon applied to the Association for a further advance of $2,500 on the construction loan which was to be paid to Dillon. The Association declined to make the advance unless the Colliers subordinated their rights to those of the Association to the extent of the advance. The Colliers executed a subordination contract for the $2,500 advanced. Dillon received this money on March 25th. In September, 1948, it became known to all parties that the Alfords, who owned and were holding for sale most of the lots in the Meadow View Estates Subdivision, would be unable to pay for the completion of the house. Dillon ceased work on it. On October 21, 1948, Dillon gave written notice to the Alfords and the Colliers of his intention to assert a mechanic's lien. In March, 1949, the Colliers rescinded their sales agreement with the Alfords by reason of the latter's default and sued to recover their $5,000 down payment and to foreclose the mortgage. On March 18th, Dillon finally filed his mechanic's lien. The Association was made a party defendant by the Colliers. It set up its $7,000 first mortgage which was allowed, and which is not in question in this proceeding.

The case falls squarely within the provisions of subsection 2 of KRS 376.010. The first part of this subsection follows: "(2) The lien shall not take precedence over a mortgage or other contract lien or bona fide conveyance for value without notice, duly recorded or lodged for record according to law, unless the person claiming the prior lien shall, before the recording of the mortgage or other contract lien or conveyance, file in the office of the clerk of the county court of the county wherein he has furnished or expects to furnish labor or materials, a statement showing that he has furnished or expects to furnish labor or materials, and the amount in full thereof. * * *"

It is not disputed that the Colliers knew Dillon was building the house on Lot 14 for the Alfords. Likewise they knew the manner in which he was to be paid for his work. On the other hand, they knew that arrangements had been made by the Alfords with the Association to finance a major part of the cost of the construction. All parties were fully apprised of the condition under which the Association made the further advance of $2,500 in March, 1948. It is undisputed that at no time prior to October, 1948, did Dillon give any indication that he planned to file a lien. The question is, Were the Colliers apprised of sufficient facts to put them on notice that Dillon intended to assert a lien?

We have pointed out frequently that the mechanic's lien statute, KRS 376.010, was designed to protect materialmen and contractors, and these liens have been upheld consistently where subsequent claimants or mortgagees had knowledge of their existence, or that they were about to be asserted. Likewise, it has been held that, where the mortgagee knows there are unpaid claims, and that the owner is unable to pay them, he is charged with such notice as to come within the meaning of the statute. Kentucky Lumber & Mill Work Co. v. Kentucky Title Savings Bank & Trust Co., 184 Ky. 244, 211 S. W. 765, 5 A.L.R. 391. See also Ideal Supplies Co. v. Underhill, 213 Ky. 741, 281 S.W. 988. In the Kentucky Lumber Case it was held that, where the Bank advanced money to build a house after construction had been started, and with the specific understanding that it was to be applied to the costs of construction, it could not apply a balance of the amount loaned the owner to defeat the materialman's lien, even though the lien was

not filed until after the Bank's mortgage had been recorded. In the Ideal Supplies Company Case it was held that the holder of a mortgage, taken while materials were being furnished to construct a house, and with knowledge that the money was being borrowed to apply on the construction and before a materialman's lien had been asserted, was not charged with such notice as to permit the materialman's claim to take precedence over his mortgage. It was pointed out also that, since the property owner's reputation was not attacked, and there was no showing that he was not paying the claims as they accrued, or that he was unable to do so, there was no more burden on the mortgagee than upon the materialman to protect the rights of the latter. In commenting upon the Kentucky Lumber Case in the Ideal Supplies Company Case, it was pointed out that the facts in the two cases were distinguishable, and that it was not the intent of the Court in the Kentucky Lumber Case to depart from the ruling in the case of Foushee v. Grigsby, 75 Ky. (12 Bush.) 75., In the Foushee Case it was held that the mere fact that work was being done on the property did not charge the mortgagee with actual notice of the existence of the lien.

We think the facts in the case at bar distinguish it from the Kentucky Lumber Case, and that it comes under the doctrine discussed in the Ideal Supplies Company Case. Clearly the Colliers knew that the house was being built. They knew also that monthly payments were to be paid to Dillon by the Alfords. It was not shown, however, that they knew these monthly payments were not being made. We think it is significant also that, upon one occasion, they assisted the Alfords in obtaining $2,500 from the Association which was to be paid to Dillon. This took place, even after the execution of the Colliers' mortgage. Apparently, Dillon was not raising question as to the payment of any balance then due him. A situation somewhat analogous to that presented in the Kentucky Lumber Case would have existed had the Association attempted to apply to its own mortgage the $2,500 which the Colliers helped the Alfords secure from it.

For the reasons given we think the judgment should be and it is reversed, with directions to set it aside and for entry of a judgment consistent with this opinion.