Jack S. WALKER et al., Appellants,

v.

VALLEY PLUMBING, INC., Appellee.

Court of Appeals of Kentucky.

June 28, 1963.

Richard C. Oldham, Clinton R. Burroughs, Louisville, for appellant.

George E. Dudley, Louisville, for appellee.

PALMORE, Judge.

By written contract dated May 7, 1957, one R. E. Pearson agreed to construct a home for the appellants, Jack Walker and wife, and convey it to them on completion. The work was completed early in July and the transaction was closed on July 8, 1957, by payment of the balance of the purchase or contract price and conveyance of the property to the Walkers. When the Walkers moved into the new home on September 9, 1957, they discovered that the outside water faucet was connected to the hot water and the dishwasher was connected to the cold water only. After an unsuccessful attempt to secure corrective action through Pearson they ascertained that Valley Plumbing, Inc., the appellee, had done the plumbing work and thereupon contacted Valley, which proceeded to correct the defect during the first week of October, 1957.

Unbeknown to the Walkers when the correctional work was ordered by them and done, Valley had not been paid by Pearson and was owed $1395 for the plumbing job on the house. Pearson had given to the Walkers at the time of closing on July 8, 1957, an affidavit that all laborers, materialmen and subcontractors had been paid in full. Valley had neither filed in the county clerk's office a statement pursuant to KRS 376.010(2) that it had furnished or expected to furnish labor or materials, nor had it notified anyone pursuant to KRS 376.-010(3) of its intention to hold the property liable for its claim. But on December 11, 1957, within 75 days after doing the slight additional work in October of 1957, Valley did proceed to notify the Walkers and record a statement of its lien claim. This was the first actual notice to the Walkers that Valley had not been paid.

█ In this proceeding brought by Valley to enforce its lien claim the chancellor held that the Walkers, as equitable titleholders, had been "owners" of the property since the date of the contract in May of 1957, hence were not intervening bona fide purchasers for value and without notice entitled to protection by virtue of KRS 376.010(2); that the services performed in October of 1957 were the last work done pursuant to the plumbing contract; and that the notice given to the Walkers on December 11, 1957, being within 75 days thereafter, complied with KRS 376.010(3). Accordingly, judgment was entered sustaining the lien for $1395. We considered that the questions involved were of sufficient novelty and general interest to sustain the Walkers' motion for appeal under KRS 21.080 and RCA 1.180.

It is interesting to note that in this same case the chancellor disallowed a similar lien claim, asserted by one Cather & Son, on the ground that the Walkers *were* bona fide purchasers under KRS 376.010(2).[1] The ground of distinction was that Valley "proceeded against the Walkers as owners while Cather & Son did not." In other words, the protection enjoyed by the Walkers on July 8, 1957, by virtue of KRS 376.010(2) was made subject to Valley's right under KRS 376.010(3) to give notice within 75 days after completion of its work and was erased by the events of September and October, 1957. This cannot be.

█ The lien conferred by KRS 376.-010(1) is subject to several limitations. One is that a statement containing the information specified in KRS 376.080 must be recorded within 6 months after the claimant has ceased to labor or furnish materials. Another is that if the claimant has not contracted directly with the owner he must give him written notice within 75 days after the last item of his material or service has been furnished. KRS 376.010(3). Still another is that his lien will lose priority to "a mortgage or other contract lien or bona fide conveyance for value without notice, duly recorded" unless he shall theretofore have recorded a statement that he has furnished or intends to furnish

---

1. The Cather & Son claim is not before us on this appeal.

labor or material, showing the full amount thereof. KRS 376.010(2). All of these limitations are consistent. Compliance with the recordation and notice provisions of KRS 376.080 and KRS 376.010(3) will preserve and perfect the lien, but to protect it against a bona fide purchaser for value without notice KRS 376.010(2) expressly requires the claimant to get to the court house first.

That the Walkers were bona fide purchasers for value without notice within the meaning of KRS 376.010(2) seems clear from a reading of Collier v. Dillon, 313 Ky. 244, 230 S.W.2d 617 (1950). In that case Dillon, by contract with Alford, was building on Alford's lot a house for which he was to be paid on monthly estimates. The Colliers contracted with Alford to buy the property on completion of the building. In order to protect their down payment the Colliers took from Alford a second mortgage, which they recorded in February of 1948. In September of that year it became apparent that Alford would be unable to pay for completion of the house, and in October Dillon gave to both Alford and the Colliers written notice of his intention to hold the property liable. Dillon thereafter recorded his lien statement within the time prescribed by KRS 376.080. Under these circumstances it was held that although the Colliers knew Dillon was building the house and was being paid monthly pursuant to progress estimates, and knew that Alford was borrowing money to make the payments, their mortgage was protected by KRS 376.010(2) and had priority over Dillon's construction lien. It was sufficient that the Colliers did not have actual notice, when their investment was made, that Dillon had not been paid. In the instant case the Walkers had no actual notice until December 11, 1957, that Valley had not been paid. Under the same principle, regardless of whether they were equitable owners (or even if they had been part legal owners) before that time, their investment on July 8, 1957, was entitled to the protection of KRS 376.010(2).

We do not attach great significance to the "ownership" status of the Walkers with respect to KRS 376.010(2). Whatever it was, they innocently put up money for a further interest in the property and recorded their title instrument before having actual or constructive notice of Valley's claim. The "ownership" of property is not an inseverable entity that must pass all at once. It may be acquired piecemeal, wholly or in part, and there is no reason why one who successively acquires separate interests in it cannot be a bona fide purchaser for value without notice as to each or any of the interests so acquired. The fact that the Walkers obtained their title in two stages, first by contract with a down payment in May and then by deed upon payment in full in July, makes no difference in principle. On each of these two occasions they parted with money in good faith and without notice. Therefore, the interest or quantum of title obtained by them in each instance, whether it be styled legal or equitable, was equally subject to the coverage of KRS 376.010(2) upon recordation.

Hannan v. Handy, 104 Conn. 653, 134 A. 71, 47 A.L.R. 259 (1926), cited by appellee in support of a contrary view, apparently did not involve a special statute comparable with KRS 376.010(2) protecting interests acquired in good faith for value and without notice.

T. W. Spinks Co. v. Pachoud Bros., 263 Ky. 119, 92 S.W.2d 50 (1936), and Montgomery v. Allen, 107 Ky. 298, 53 S.W. 813 (1899), in which it was held that the vendee under a contract of purchase and sale is the "owner" within the meaning of the statutes in question,[2] are distinguishable by the circumstances that in each of them the lien claimant dealt with the executory vendee. They stand for the proposition that a pur-

2. See, for example, KRS 376.020.

chaser under a contract of sale, if he is in possession of the property and the vendor consents to his contracting for the construction of improvements thereon, is so far an owner that the lien of construction contracts made by him will have priority over the title or lien of the vendor. In this case Valley did not contract with the Walkers.

The distinction drawn by counsel between Collier v. Dillon, 313 Ky. 244, 230 S.W.2d 617 (1950) and this case, in that the Walkers "dealt with" Valley whereas the Colliers had not dealt with the contractor Dillon, is not tenable. Whatever lien Valley ever had in this property arose before, and was cut off when, the Walkers perfected their interest as bona fide purchasers by recording the deed of conveyance in July of 1957. We recognize the principle that minor finishing work done at the request of the owner may revive and renew the running of the time limits for notice and recording under KRS 376.010(3) and KRS 376.080. National Surety Co. v. Price, 162 Ky. 632, 172 S.W. 1072 (1915); Akers & Co. v. Weil, 251 Ky. 689, 65 S.W. 2d 712 (1933); City of Ashland v. Ben Williamson & Co., 294 Ky. 446, 171 S.W. 2d 968 (1943). These, however, were cases in which it was the same owner against whom the claimant was originally entitled to assert a lien, not a new owner having no notice or knowledge of the unpaid claim, and against whom the statute provided no assertible lien after recording of his deed. Surely it must be recognized that it would be grossly unjust to saddle a $1395 liability on the Walkers simply on the basis of their innocent and unguarded act in requesting Valley to remedy a defect in the work done by it for Pearson and for which they already had paid Pearson. Indeed, in a true sense their request upon Valley was derivatively the action of Pearson himself, as they had no claim on Valley except through him. As to the Walkers, Valley had no lien in the first place, hence had nothing to revive or renew by the work done in October of 1957. There was no such "dealing" by the Walkers with Valley as would, in our opinion, raise against their interest a lien where none existed before.

The judgment is reversed with directions that the lien claim of Valley Plumbing Company be disallowed.