**GUARANTEE ELECTRIC COMPANY, Plaintiff,**

v.

**BIG RIVERS ELECTRIC CORPORATION; Burns and Roe, Inc., et al., Defendants.**

**Civ. A. No. 85–0031–O(CS).**

United States District Court,
W.D. Kentucky,
at Owensboro.

Sept. 24, 1987.

Byron E. Francis, Richard A. Oertli, Francine I. Katz, St. Louis, Mo., Richard S. Taylor, Miller, Taylor, Burlew & Meyer, Owensboro, Ky., for plaintiff.

Morton Holbrook, Lizbeth Ann Tully, Holbrook, Gary, Wible & Sullivan, Owensboro, Ky., for defendant, Big Rivers Elec. Corp.

Kent McElwain, John M. Bush, Stites and Harbison, Louisville, Ky., for defendants, Automatic Sprinkler Corp. of America, Figgie Intern., Inc., The American Ins. Co.

Michael A. Owsley, English, Lucas, Priest & Owsley, Bowling Green, Ky., for defendant, Burns & Roe, Inc.

## MEMORANDUM OPINION

SIMPSON, District Judge.

This action involves a contract dispute arising from the construction of the D.B. Wilson Station, (hereinafter "Station") a 440 megawatt coal-fired generating unit. In its complaint, Guarantee Electric Company (hereinafter "GECO"), a subcontractor, alleges various claims in contract and tort against Big Rivers Electric Company (hereinafter "BREC"), owner of the Station; Burns and Roe, Inc. (hereinafter "BRI"), an engineering firm retained by BREC to supervise and manage construction of the Station; and, Automatic Sprinkler Corporation of America (hereinafter "ASCA"), the prime contractor of BREC for construction of the fire protection system at the Station. This matter is before the Court on separate motions by BREC and BRI for summary judgment in their favor pursuant to Rule 56, Fed.R.Civ.P. Jurisdiction exists pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and an amount in controversy in excess of $10,000.00.

Interpreting the evidence in a light most favorable to GECO,[1] the facts may be stat-

---

1. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)

(citation omitted).

ed as follows. In the late 1970s, BREC began to plan for the construction of the Station to be located in Centertown, Kentucky. The proposed Station would include two 440 megawatt coal-fired generating units (hereinafter "Unit I" and "Unit II"). In 1978, BREC entered into an engineering service contract for the design and construction of the generating plant with BRI, "Contract No. 559A". Among its other responsibilities, BRI agreed to supervise and manage its construction.

In 1980, an employee of BREC approached GECO for the purpose of inquiring whether or not GECO would submit a bid for electrical work related to the construction of a fire protection system to be built for both Units I and II. GECO responded affirmatively and its name was placed on a list of prospective bidders.

GECO formally submitted its bid for electrical work to ASCA by letter. ASCA incorporated GECO's bid with its own and submitted a bid to BREC for the complete construction of a fire protection system for both Units. This complete bid was ultimately accepted by BREC and a contract for construction of the fire protection system was executed between BREC and ASCA on August 14, 1981. This contract was known as "Contract 624".

On October 7, 1981, Henry E. Bartoli, an employee of BRI and Project Manager for construction of the Station, notified ASCA by letter and at the direction of BREC, that Unit II of the construction project was on indefinite hold. This written communication was acknowledged by ASCA.

In December of 1981, ASCA issued a Purchase Order to GECO. This Purchase Order is the contract between ASCA and GECO for electrical work to be performed in connection with the fire protection systems at both Units I and II.

BREC and ASCA later executed Amendment No. 3 to Contract 624 confirming that Unit II was on indefinite hold in August of 1982. The amendment acknowledges a letter agreement between BREC and ASCA on October 7, 1981, which suspended work

on Unit II and officially designated the letter agreement as formal notice that Unit II was on hold. BRI also signed the amendment.

On October 29, 1982, GECO began to mobilize labor and material at the Station site for both Unit I and Unit II, and simultaneously performed electrical work on both Units. GECO first learned that Unit II was on indefinite hold from ASCA on July 11, 1983. GECO later received a copy of Amendment No. 3 to Contract 624 on August 10, 1983. Thereafter, GECO brought this action.

For its cause of action against BREC, GECO asserts that BREC may be liable to GECO for breach of contract or, in the alternative, under the doctrine of unjust enrichment. In addition, GECO alleges that BRI was the agent of BREC and, as principal, BREC may be held liable for BRI's breach of its duty to supervise construction at the Station due to the negligent failure of BRI to notify GECO that BREC had eliminated Unit II from the construction project. Lastly, GECO alleges negligence in connection with its breach of contract claim. As against BRI, GECO alleges that BRI was negligent in the performance of its duties as construction supervisor/manager, and breached a duty owed to GECO by failing to notify GECO that construction on Unit II had been put on hold prior to the commencement of work by GECO.

As parties moving for summary judgment, BREC and BRI have the initial burden of proving the nonexistence of any genuine issues of material fact and their entitlement to summary judgment as a matter of law. *Anderson v. Liberty Lobby,* 106 S.Ct. at 2511; *Heheman v. E.W. Scripps Co.,* 661 F.2d 1115, 1128 (6th Cir. 1981), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982). Once the defendants have sustained their initial burden, then it is incumbent on the non-movant to "set forth specific facts showing there is a genuine issue for trial." *Anderson,* 106 S.Ct. at 2514.

With these standards in mind, the Court must review the record to determine whether or not summary judgment in favor of either BREC or BRI is proper.

### BREACH OF CONTRACT; UNJUST ENRICHMENT

GECO asserts its entitlement to recovery for breach of contract by virtue of an alleged contractual relationship with BREC based upon various provisions of the contracts between the parties to this action. Alternatively, GECO alleges that it enjoys the status of a third-party beneficiary with regard to Contracts 559A and 624. Finally, GECO alleges that BREC may be liable under the doctrine of unjust enrichment.

In support of GECO's claim of a contractual relationship with BREC, GECO has directed this Court to certain provisions of the agreements between the parties. The Purchase Order executed between GECO and ASCA states as follows:

Subcontractor [GECO] shall observe and be bound by all provisions set forth in the contract between contractor [ASCA] and owner [BREC], including but not limited to ...

Article VI of the Contractor's [ASCA] Proposal made a part of the contract between BREC and ASCA states, in pertinent part, that:

The Bidder [ASCA] shall not enter into any subcontract ... without the approval in writing of the Owner [BREC].... If the Bidder shall enter into a subcontract with any other subcontractor for the performance of any part of this contract [Contract 624], the Bidder shall be as fully responsible to the Owner and Administrator for the acts and omissions of such subcontractor and of persons employed by such subcontractor as the Bidder would be for its own acts and omissions and those of persons directly employed by it. Bidder shall prepare all subcontracts on REA Form 282 [actually 232] included herein. The written approval of the Owner, for purposes of this section, shall be deemed fulfilled when the Owner executes Form 282 [232].

Contract 624, Subcontracts, Section 8.

REA Form 232 is prefaced as an agreement between the contractor and the subcontractor, and states, in pertinent part, as follows:

*Section 2.* The subcontractor agrees that all of the work to be done hereunder shall be carried out as directed by the Engineer [BRI] of the Owner [BREC] in full accordance with its terms and provisions of this contract.

*Section 5.* The work to be performed hereunder shall be completed to the satisfaction of the Contractor [ASCA] and the owner ...

*Section 7.* This agreement shall not become effective until consented to and approved in writing by the Owner.... Approval by the Owner ... shall in no way operate to release the Contractor from the Contractor's duties and obligations under the Contract [Contract 624].

The Purchase Order and REA Form 232 represent agreements exclusively between GECO and ASCA. They are the only contracting parties to the agreements. The provision of requiring GECO to abide by the provisions of Contract 624 as expressed in both agreements inures solely to the benefit of ASCA in the event that GECO were not to comply with the design and construction requirements established by BRI. Article VI of ASCA's proposal to BREC specifically provides that ASCA is liable to BREC for all acts or omissions of its subcontractors and their employees. REA Form 232, Section 7 confirms that the contractor may be liable for the acts of the subcontractor by virtue of the specific disclaimer against interpretation as a release in favor of the contractor from the broad liability provision of Contract 624.

With regard to GECO's contention that privity exists as between BREC and itself solely on the language contained in the Purchase Order, there is no basis and GECO has not cited any law that would allow a third-party to be bound by a contract merely by mention of another contract therein to which the third-party is

bound. It is obvious that BREC did not intend to become a party to any contract between a contractor and his subcontractor. Article VI and REA Form 232 merely evidence an intent by BREC to be empowered to either authorize or not authorize the actual making of the agreements as between contractors and their subcontractors, not join in their contracts. In addition, BREC did not seek an additional cause of action against subcontractors. Rather, BREC sought to preserve its rights against the contractor under Contract 624. If BREC had sought a separate cause of action against subcontractors, it had only to join in the execution of REA Form 232. Where there is no intent to contract, there is no contract. *National Bank of Kentucky v. Louisville Trust Co.*, 3 F.Supp. 909, *aff'd.*, 67 F.2d 97 (6th Cir.1933), *cert. denied*, 291 U.S. 665, 54 S.Ct. 440, 78 L.Ed. 1056 (1934) (applying Kentucky law).

Therefore, any claim of either an express or implied contractual relationship as between BREC and GECO must fail.[2] See *Nat Harrison Associates, Inc. v. Louisville Gas & Electric Company*, 512 F.2d 511 (6th Cir.1975), *cert. denied*, 421 U.S. 988, 95 S.Ct. 1992, 44 L.Ed.2d 478 (1975) (applying Kentucky law); *Commonwealth, Dept. of Highways v. L.G. Wasson Coal Mining Corp.*, 358 S.W.2d 347 (Ky.1962). That BREC was aware of the contract between GECO and ASCA adds nothing to GECO's claims of privity. *General Electric Co. v. Amer. Buyers Cooperative*, 316 S.W.2d 354, 361 (Ky.1958).

In the alternative, GECO asserts that, even though privity may be nonexistent, it is still entitled to recovery as a third-party beneficiary of Contract 624.

■ It has long been the rule in Kentucky that no stranger to a contract may sue for its breach unless the contract was made for his benefit. *Sexton v. Taylor County*, 692 S.W.2d 808, 810 (Ky.App.

1985), citing *Long v. Reiss*, 290 Ky. 198, 160 S.W.2d 668 (1942). Only third parties, with whom there is no privity of contract, but for whom the contracts are made, may properly be classified as third-party beneficiaries. *Id.; King v. National Industries, Inc.*, 512 F.2d 29, 32 (6th Cir.1975) (applying Kentucky law). In such an instance, privity of contract is created by operation of law. *Simpson v. JOC Coal, Inc.*, 677 S.W.2d 305, 308 (Ky.1984) (citation omitted).

■ Whether or not GECO qualifies as a third-party beneficiary to either Contract 559A or 624 shall be determined in accordance with the following:

> The only parties having such rights are donee beneficiaries and creditor beneficiaries. One is a donee beneficiary if the purpose of the promisee in buying the promise is to make a gift to the beneficiary. A person is a creditor beneficiary if the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of an actual or supposed duty or liability of the promisee to the beneficiary. Any others who may incidentally benefit from a contract are no more than incidental beneficiaries with no enforceable rights under the contract. (citations omitted).

*King*, 512 F.2d at 33.

A thorough reading of Contract 559A, entered into by BREC and BRI nearly two years prior to the submission of a bid by GECO to ASCA, fails to yield language that would raise an inference that GECO was intended to receive any benefit from the contractual relationship established thereby. In fact, Contract 559A specifically states that "the obligations of the Engineer [BRI] hereunder run to and are for the benefit of *only* the Owner and Administrator [BREC]."[3] (emphasis added).

---

**2.** GECO cannot contend that any contractual relationship existed as between itself and BRI. Any relationship BRI may have with GECO would be more tenuous than GECO's relationship with BREC. BRI was not a party to Contract 624 or any other contract between the contractors and their subcontractors. See gen-

erally *Johnson v. Coleman*, 288 S.W.2d 348 (Ky. 1956).

**3.** Contract 559A, Engineering Service Contract for the Design and Construction of a Generating Plant, Article III, Section I (emphasis added).

Furthermore, GECO has not shown that BREC intended to make a gift to GECO or that Contract 624 was executed for GECO's benefit. Neither has there been any showing that the performance of either Contract 559A or 624 by BREC or BRI would satisfy any real or asserted duty owed to GECO so as to make GECO a creditor beneficiary. In the absence of such evidence, GECO may not sue on the contract under Kentucky law. *International Brotherhood of Boilermakers v. Holt*, 418 S.W.2d 758 (Ky.1967).

Lastly, GECO asserts a quasi-contract claim against BREC based on unjust enrichment or *quantum meruit*. BREC contends that GECO may not recover for unjust enrichment since GECO failed to pursue its statutory remedy by obtaining a mechanic's lien against property owned by BREC pursuant to Ky.Rev.Stat. 376.010. The underlying premise of BREC's assertion is that Ky.Rev.Stat. 376.010 provides the sole and exclusive remedy for subcontractors who make improvements to property and do not receive payment from the prime contractor.

■ It is apparent that no Kentucky court has spoken on this precise issue. When a federal court is confronted with an issue undecided by state law in a diversity action, it is the Court's responsibility to decide this unsettled issue of state law as a Kentucky court would within the mandate of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1290 (6th Cir.1982) (citation omitted).[4] Accordingly, this Court must "ascertain from all available data what the state law is and apply it;" *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir.1985) (citations omitted); in the exercise of its best judgment. *Bagwell v. Canal Ins. Co.*, 663 F.2d 710, 712 (6th Cir.1981).

■ In its determination of a question unanswered by state law, it is appropriate for the federal court to consider analogous state cases and relevant dicta, the restatement of law, law review commentaries and decisions of other jurisdictions or the "majority rule". *Bailey v. V & O Press*, supra., citing C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 4507 (2d Ed.1982). However, it is axiomatic that a court should first look to the plain language of the statute to determine the meaning of its language. *McBarron v. S & T Industries, Inc.*, 771 F.2d 94, 97 (6th Cir.1985), citing 2A Sutherland Statutory Construction § 46.01 (4th Ed.1984); *Sec. and Exch. Com'n v. Ambassador Church, etc.*, 679 F.2d 608, 611 (6th Cir.1982).

Kentucky first enacted a mechanic's and materialmen lien statute in 1839. 1839 Acts, General Assembly, Commonwealth of Kentucky, p. 83. The current statute, Ky. Rev.Stat. 376.010, states, in pertinent part, that:

> Any person who performs labor or furnishes materials, for the erection, altering or repairing of a house or other structures ... or for the improvement in any manner of real property including ... by contract with, or by written consent of, the owner, contractor, subcontractor, architect or authorized agent, shall have a lien thereon, and upon the land upon which the improvements were made or on any interest the owner has therein to secure the amount thereof with interest ... and costs....

2463: amend. Acts 1952, ch. 9; 1972, ch. 132, § 1; 1972, ch. 191, § 1; 1974, ch. 173, § 1; 1978, ch. 384, § 501, effective June 17, 1978; 1984, ch. 385, § 1, effective July 13, 1984.

The remainder of the statute primarily addresses matters of priority, notice and procedural compliance therewith. It is clear that the mechanic's lien statute would allow issuance of such a lien to a subcontractor for improvements to property if the subcontractor was not paid by the contractor even though there exists no written contract as between the subcontractor and the owner of the improved property. *Citizens Fidelity Bank & Trust Co. v. Fenton*

---

**4.** The difficulty of forecasting what state courts may decide the state law to be at some future point does not by itself provide a sufficient basis for this Court to decline its jurisdiction. *Id.* at 1290 n. 4 (citation omitted).

**1378**

*Rigging Co.,* 522 S.W.2d 862 (Ky.App. 1975). However, nowhere does the statute specifically state that its remedy is exclusive as to any or all other claims a subcontractor may have related to a transaction involving the improvement of property.

The general rule in Kentucky requires that the intention to repeal or abrogate a cause of action at common law by enactment of a statute be clearly apparent from the text of the statute. *Spirko v. Commonwealth,* 480 S.W.2d 169 (Ky.1972); *Stovall v. A.O. Smith Corp.,* 676 S.W.2d 475 (Ky.App.1984); *Gussler v. Damron,* 599 S.W.2d 775 (Ky.App.1980). If such intention is not so apparent, a statute may only preempt a common law cause of action if it deals with the same duties established by the common law, and imposes some of those duties rather than all of them. *Fiscal Court v. N.C. & St. L. Railway,* 202 Ky. 846, 850, 261 S.W. 617 (1924).

█ Since Ky.Rev.Stat. 376.010 does not expressly state that its remedy is sole or exclusive, the doctrine of unjust enrichment was not abrogated by its enactment. Furthermore, because the mechanic's lien statute does not alter the common law duties of parties to pay for improvements to their property, the remedy established by Ky.Rev.Stat. 376.010 is cumulative and not exclusive. See *Fiscal Court,* supra.

This interpretation is in keeping with the purpose of the statute's enactment and the general rule that Kentucky's mechanic's lien statutes be liberally construed to protect those who furnish labor and materials.[5] See *Campbell & Summerhays, Inc. v. Greene,* 381 S.W.2d 531 (Ky.1964); *Hay-*

*nie v. Benton,* 258 S.W. 488 (Ky.1953); *Hodges v. Quire,* 295 Ky. 78, 174 S.W.2d 9 (1943); *Ohio Oil Co. v. Smith-Haggard Lumber Co.,* 288 Ky. 278, 156 S.W.2d 111 (1942); *Egyptian Supply Co. v. Boyd,* 117 F.2d 608 (6th Cir.1941). The mechanic's lien statute has been termed a "beneficient" one enacted for the encouragement of building mechanics and materialmen. *In re: Heat 'N' Eat Brands, Inc.,* 174 F.Supp. 598 (W.D.Ky.1959), *aff'd.,* (two cases) 278 F.2d 488, 280 F.2d 426 (6th Cir. 1960). See *Collier v. Dillon,* 313 Ky. 244, 230 S.W.2d 617 (1950); *In re: Louisville Daily News & Enquirer,* 20 F.Supp. 465 (W.D.Ky.1937). "Its history is that of enlargement and extension of the thing covered, the persons entitled to the lien as well as a liberality in construction of statutes so as to pay the laborer his hire." *Waddy Bluegrass Creamery Co., etc. v. Davis-Rankin Building and Mfg. Co.,* 103 Ky. 579, 584, 45 S.W. 895 (1898).

BREC directs this Court's attention to two Kentucky cases for the proposition that the remedy created in Ky.Rev.Stat. 376.010 is exclusive; *Blatz Company v. Stivers,* 200 Ky. 801, 255 S.W. 699 (1923) and *Tri-State Plumbing & Heating Corp. v. Josselson,* 272 S.W.2d 458 (Ky.1954). For the reasons stated herein, this Court does not find these cases persuasive on the issue.

In *Blatz v. Stivers,* a subcontractor filed an action against the property owner for paint he purchased from a supplier and allegedly used to improve a school building. The subcontractor sought to obtain a lien as against the building or a personal judg-

---

5.  When Kentucky courts have been called upon to interpret ambiguities in the language of the mechanic's lien statute regarding procedural compliance therewith and subject matter covered therein, the courts have often stated that although the statute was enacted in derogation of common law, the lien statute should be liberally construed. See *Union Indem. Co. v. Pennsylvania Boiler Works,* 246 Ky. 473, 55 S.W.2d 367 (1932); *Mid-Continent Petroleum Corp. v. Southern Surety Co.,* 225 Ky. 501, 9 S.W.2d 229 (1928); *Avery & Sons v. Woodruff & Cahill,* 144 Ky. 277, 137 S.W. 1088 (1911); *Montgomery v. Allen,* 107 Ky. 298, 53 S.W. 813 (1899); *Waddy Bluegrass Creamery Co.,* supra. The difference between derogation and abrogation is best ex-

pressed by the maxim, "to derogate from a law is to take away a part of it; to abrogate a law is to abolish it entirely." *Black's Law Dictionary,* 400 (5th Ed.1979) ("derogatur legi, cum pars detrahitur; abrogatur legi, cum prorus tollitur"). While it may be argued that passage of the mechanic's lien law, a remedy unavailable at common law, served to erase common law actions, Kentucky's rejection of the narrow statutory construction rule normally applied by courts to statutes standing in derogation of the common law mitigates against such a finding by this Court. Kentucky has adopted the competing rule of statutory construction, that is, remedial statutes should be liberally construed.

ment. The dismissal of the subcontractor's claims by the trial court was upheld since the subcontractor failed to adhere to the notice provisions of the mechanic's lien statute and a dispute existed as to whether the subcontractor had been paid by the contractor who was not a party to the action. *Blatz*, 200 Ky. at 803–804, 255 S.W. at 700. The appellate court made no mention whatsoever of the theory of unjust enrichment.

In *Tri-State Plumbing & Heating Corp. v. Josselson*, a plumbing contractor entered into an agreement with a lessee for improvements of leased property. When the lessee refused to pay the contractor, he sought payment from the owner of the property. The Court held that "an allegation that the owners were obligated, by agreement with their tenant, to pay for the kind of improvements made by the plaintiff, does not warrant relief on the theory of unjust enrichment." *Id.*, 272 S.W.2d at 458.

This Court can only speculate as to how the state courts in *Blatz* or *Tri-State* reached their respective conclusions. BREC asserts that both courts did so in recognition of a rule that a mechanic's lien statute provides the exclusive remedy for a subcontractor who is not paid by the prime contractor. However, the result in *Blatz* could have been reached because of the failure of the subcontractor to join the contractor in his action and show that he had not been paid by the contractor. In *Tri-State*, the "kind of improvement" made by the contractor may have been of the type which only benefitted the lessee and not the lessor. In either case, relief on the basis of unjust enrichment may have been denied because an essential element of proof was totally lacking, that is, that enrichment to the defendant was unjust. See generally *Bogan v. Finn*, 298 S.W.2d 311 (Ky.1957). Moreover, even if the Court were to accept that the facts and the relationships between the parties in both *Blatz* and *Tri-State* were similar to the instant

case, the fact remains that in both instances Kentucky courts passed on the opportunity to adopt the rule espoused by BREC.[6]

A recent opinion by the Court of Appeals of Kentucky provides a better indication of how Kentucky courts might decide the issue presently before the Court. In *Perkins v. Daugherty*, 722 S.W.2d 907 (Ky. App.1987), the Court held that where an engineer performed work toward the development of residential property, he was entitled to recover as against the property owner on the theory of unjust enrichment in the absence of an express or written contract. In addition, the engineer was also awarded interest on the judgment since he had filed a valid engineer's lien pursuant to Ky.Rev.Stat. 376.075. *Id.*, 722 S.W.2d at 909. The Court did not discuss the exclusivity of the statutory remedy. Rather, the manner in which the Court structured its opinion indicates that the common law and the statutory remedies were viewed as independent of one another. First, the Court upheld the damages awarded in *quantum meruit* and then applied KRS 376.075 to add interest to the judgment. *Id.*

▉ This independent analysis is as justifiable, if not more so, in the instant case due to the significant variance between the remedy at common law and that supplied by the mechanic's lien statute. The primary function of the mechanic's lien is to create a claim by law to secure priority of payment. *Hodges v. Quire*, supra.; *Egyptian Supply Co.*, supra. The perfected lien operates only as against the property or *in rem; Powers v. Brewer*, 238 Ky. 579, 38 S.W.2d 466 (1931); and must generally be based upon a contract or written consent. Ky.Rev.Stat. 376.010. The common law action, on the other hand, creates no priority of payment, is equitable in nature; *Emerson v. Emerson*, 709 S.W.2d 853, 855 (Ky.App.1986); and results in a money judgment against a person or *in person-*

**6.** The language used by the Court in *Tri-State* indicated that the Court had considered the theory of unjust enrichment but decided that the facts did not warrant its application. *Id.*, 272

S.W.2d at 458. The Court did not indicate that unjust enrichment would be inapplicable under any factual circumstance.

am.[7] There need not be any express agreement or written contract. *Perkins v. Daugherty*, 722 S.W.2d at 909. In light of these differences, the liberal construction given the language of the statute by Kentucky courts and its beneficial purpose, it would be illogical for this Court to assume that, at the same time the Kentucky Legislature sought to expand a subcontractor's ability to collect a debt for improvements to property, it also intended to foreclose every other opportunity for recovery when the subcontractor fails to comply with the procedural prerequisites of the statute. If such is the intent of the Legislature, then let them say so.

Furthermore, although no "majority" rule exists with regard to a subcontractor's right to both actions as against a landowner, seven jurisdictions do permit both the statutory and the common law actions to coexist. *R & B Elec. Co., Inc. v. Amco Const. Co., Inc.*, 471 A.2d 1351 (R.I.1984); *Federal Land Bank v. Jones*, 456 So.2d 1 (Ala.1984); *Indianapolis Raceway Park, Inc. v. Curtiss*, 179 Ind.App. 557, 386 N.E. 2d 724, 727 n. 4 (1979); *Costanzo v. Stewart*, 9 Ariz.App. 430, 453 P.2d 526 (1969); *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150 (1966); *Meehan v. Cheltenham Township*, 410 Pa. 446, 189 A.2d 593 (1963); *Lundstrom Constr. Co. v. Dygert*, 254 Minn. 224, 94 N.W.2d 527 (1959). A substantial number of other jurisdictions have denied quasi-contractual relief to subcontractors as against landowners on the grounds of "insufficiency of evidence to establish any unjust enrichment of the landowner at the subcontractor's loss or expense, and the failure of the subcontractor to have availed himself of his other remedies." Annot., 62 A.L.R.3d § 4 at 297

(accumulated cases). Six jurisdictions have either stated or implied that a state mechanic's lien statute is the subcontractor's sole and exclusive remedy as against a landowner. *Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261 (Mo.App.1984); *Bates and Rogers Constr. Corp. v. North Shore Sanitary District*, 92 Ill.App.3d 90, 47 Ill.Dec. 158, 414 N.E.2d 1274 (1981); *Berger Engineering Co. v. Village Casuals, Inc.*, 576 S.W.2d 649 (Tex.Civ.App. 1978); *George M. Morris v. Four Seasons Motor Inn, Inc.*, 90 N.M. 654, 567 P.2d 965 (1977).[8] See *S & M Rotogravure Service v. Baer*, 77 Wisc.2d 454, 252 N.W.2d 913 (1977); *Bishop v. Flood*, 133 Ga.App. 804, 212 S.E.2d 443, 444 (1975).

For the reasons stated above, this Court holds that Ky.Rev.Stat. 376.010 is not the sole and exclusive remedy for a materialman or subcontractor when he is not paid for labor or materials used to benefit another's property. Under such circumstances, an action in *quantum meruit* may lie against the landowner to recover the reasonable value of said labor and materials.[9]

However, simply because a subcontractor or materialman has furnished materials or labor which benefit a third party, recovery in *quantum meruit* is not assured. A person is not unjustly enriched unless "the retention of the benefit would be unjust". *Bryan Brothers Packing Co. v. Garrard*, 386 S.W.2d 469, 474 (Ky.1964), quoting Restatement of Restitution § 1 comment (a) (1937). Accordingly, a claimant shall be required to prove three elements in each case. First, a benefit must be conferred upon the defendant at the plaintiff's expense. *Bogan v. Finn*, 298

---

**7.** It is doubtful that a subcontractor would intentionally forego his statutory remedy in favor of seeking a personal judgment against the unknown solvency of the landowner. However, if such is the case, the subcontractor would face the substantial risk of finding himself with his judgment in hand at the end of a long line of creditors.

**8.** But compare *United States, etc. v. Ins. Co. of North America*, 695 F.2d 455, 458 (10th Cir. 1982) (interpreting New Mexico mechanic's lien statute to allow subcontractor who has lost mechanic's lien claim to assert claim in *quantum meruit* against a landowner who has not paid a general contractor).

**9.** As between a landowner and the prime contractor, the doctrine of unjust enrichment is inapplicable "where there is an explicit contract which has been performed." *Codell Const. Co. v. Com.*, 566 S.W.2d 161, 165 (Ky.App.1977). A lack of privity of contract is a prerequisite to the initiation of an action *in quantum meruit*. See *Perkins v. Daugherty*, supra.

S.W.2d at 313–314. Second, the benefit must result in an appreciation by the defendant. *Perkins v. Daugherty,* 722 S.W. 2d at 909. Finally, acceptance of the benefit under circumstances which render its retention, by the defendant without payment of the value thereof, inequitable. *Bryan Brothers v. Garrard,* supra. See *R & B Elec. Co., Inc.,* 471 A.2d at 1355–56; *Paschall's, Inc.,* 407 S.W.2d at 155.

■ The most significant element of proof in an action for recovery is that the enrichment to the defendant is unjust. 66 Am.Jur.2d *Restitution and Implied Contracts* § 16 (1973); *Paschall's, Inc.,* supra. Accordingly, the landowner may not be held liable when he has paid any person for the improvements upon his property. See generally *Blatz Company v. Stivers,* supra. Furthermore, before recovery may be had against the landowner in *quantum meruit,* the materialman or subcontractor must exhaust his remedies against the person with whom he contracted and has yet to receive the reasonable value of his services. *Paschall's, Inc.,* supra.

■ Therefore, in accordance with the reasons stated above, BREC is denied summary judgment on plaintiff's claim for recovery on the legal theory of unjust enrichment or *quantum meruit.*

### NEGLIGENT SUPERVISION

■ In addition to its contract and quasi-contract theories for recovery, GECO seeks to hold both BREC and BRI liable for the alleged negligent failure of BRI to notify GECO that construction of Unit II was placed on indefinite hold prior to GECO's commencement of work at the Station. In its complaint, GECO alleges that BREC and BRI negligently breached a duty to inform GECO based upon either a contractual or agency relationship.

In absence of a duty running from either BREC or BRI to GECO, there can be no cause of action for negligence. *Penco, Inc. v. Detrex Chemical Industries,* 672 S.W.2d 948 (Ky.App.1984) (citations omitted). In

*Penco,* the Court adopted the proposition set forth in an opinion by a Texas appellate court that "one who is not a party to the contract or in privity thereto may not maintain an action for negligence which consists merely in breach of contract." *Id.* at 951, quoting *B & C Construction Company v. Grain Handling Corp.,* 521 S.W.2d 98, 102–03 (Tex.Ct.Civ.App.1975). Having already found that GECO may not claim privity of contract with either BREC or BRI, it follows that GECO may not maintain an action for breach of a duty based on any supposed contractual relationship between the parties. The same is true regarding the establishment of any agency relationship on the contracts.

■ GECO's next assertion is that the liability of BREC and BRI may be premised solely on the existence of an agency relationship independent of the contracts. In the alternative, GECO contends that this Court should adopt a rule, heretofore not recognized by Kentucky courts, and create a duty which runs from an architect or engineer who engages in tortious action to the damage and hinderance of either a contractor or subcontractor. See *Berkel & Co. Contractors v. Providence Hospital,* 454 So.2d 496 (Ala.1984); *Bates v. Rogers Constr. v. North Shore, etc.,* 92 Ill.App.3d 90, 47 Ill.Dec. 158, 414 N.E.2d 1274 (1980); *Davidson & Jones v. County of New Hanover,* 41 N.C.App. 661, 255 S.E.2d 580 (1979).

In Kentucky, an agent is personally liable for wrongs committed against third parties even though the acts are performed during the scope of employment and under conditions which would render the principal liable as well. *Carr v. Barnett,* 580 S.W.2d 237, 240 (Ky.App.1979) (citation omitted). Agency is regarded as a contractual relationship that may be established by circumstantial evidence, or implied by the acts and conduct of the parties themselves.[10] *Monohan v. Grayson County Supply Co.,* 245 Ky. 781, 784, 54 S.W.2d 311 (1932). When an apparent authority is claimed to arise from representation or con-

---

**10.** The burden of proving agency is upon the party alleging it. *Crump v. Sabath, et al.,* 261

Ky. 652, 88 S.W.2d 665 (1935). In the instant case, GECO has this burden.

**1382**

duct, "the acts or statements of the principal must be looked to for the requisite foundation and not to those of the agent." *Savannah Sugar Refinery v. R.C. Canada Dry,* 593 S.W.2d 880, 883 (Ky.App.1979).

In support of its assertion of an agency relationship, GECO relies on an alleged industry practice whereby a construction manager or supervisor is recognized by contractors and subcontractors as an agent of the property owner; a letter from BRI to prospective bidders that BRI was the duly authorized representative of BREC; a memorandum from BRI to ASCA that stated BRI was acting as agent for BREC; BRI's conduct as observed at the job site by GECO; and various provisions of the contracts between parties that allow BREC to add or subtract from the scope of the construction project or the sequence of construction at the site. In addition, BRI held weekly meetings between engineers, contractors and subcontractors to coordinate work.

Since this Court must look to acts or statements by BREC with regard to the establishment of an apparent authority granted BRI, the letter and memorandum from BRI to contractors as well as GECO's observance of BRI's conduct at the job site may not be considered as evidence of any agency relationship and must fall by the wayside. See *Savannah Sugar Refinery,* supra. Neither will this Court create an agency relationship between BREC and BRI based solely upon a pre-existing industry practice.

BRI's relationship with BREC is better characterized as that of an independent contractor. In determining whether one is an agent or independent contractor, the most significant criterion is "whether it is understood that the alleged principal or master has the right to control the details of the work." *United Engineers & Constructors, Inc. v. Branham,* 550 S.W.2d 540, 543 (Ky.1977). The true test of a contractor is that "he renders service in the course of an independent occupation, representing the will of the employer only as to the result of his work, and not as to the means [and methods] by which it is accom-

plished." *Harmount & Woolf Tie Co. v. Barker,* 251 Ky. 795, 799, 66 S.W.2d 45 (1933) (citations omitted).

Albeit BREC retained the right to add or subtract from the scope of the construction project or alter the sequence of construction at the Station, GECO has failed to produce any evidence that BREC directly engaged in actual supervision or controlled the details of BRI's oversight of the project itself. That, under the BRI/BREC contract, all work was to be done to the ultimate satisfaction of BREC fails to create any agency relationship. See *Harmount & Woolf Tie,* supra. That BREC held the purse strings to the project and depending upon available funding might want to add or subtract from the total project or alter construction sequentially to conserve costs is insufficient to create an agency relationship. BRI was responsible to BREC for the result of its work, that is, completed construction of the Station in accordance with the approved plans and specifications.

■ This Court is reluctant to stretch the fabric of Kentucky law by adoption of a rule that would create a duty for architects or engineers to manage or supervise subcontractors at construction projects in a non-negligent manner absent privity of contract or an agency relationship. However, even if this Court were to find that an agency relationship existed as between BREC and BRI or adopted this new rule, under the facts and circumstances of this action GECO's action for negligence would still fail as a matter of law. First, GECO has not adduced any evidence to raise an inference that BRI voluntarily assumed any duty to notify subcontractors of changes in the plans and specifications for the Wilson Station. See generally *Louisville Cooperage Co., Inc. v. Lawrence,* 313 Ky. 75, 78–79, 230 S.W.2d 103 (1950). Secondly, even though the adoption of this new rule would create an action in tort, the scope of BRI's duty would be defined by the BREC/BRI contract. *Bates & Rogers Const.,* 414 N.E.2d at 1280 (citations omitted); *County of New Hanover,* 255 S.E.2d at 584.

The contract between BRI and BREC specifically states that BRI is not responsible for a contractor's construction means, methods or techniques. Engineering Service Contract, Article III, Section I, June 30, 1978. In addition, BRI was only obligated to notify BREC and ASCA of details in connection with changes in plans and specifications. *Id.*, Section II. By execution of the letter agreement, October 7, 1981, and the Amendment to Contract 624 between BREC and ASCA, BRI satisfied its obligations under the BRI/BREC contract.

Pure speculation as to what a party could or might have done in the absence of a duty to act in some affirmative manner is entirely hypothetical and without import. *Davies v. Collins*, 349 F.Supp. 62, 66 (E.D. Ky.1972). Accordingly, both BREC and BRI are entitled to summary judgment on plaintiff's claims of negligence grounded in either contract or tort.

Having carefully considered the pleadings and all other admissible documents on record, this Court determines that both BREC and BRI are entitled to summary judgment in their favor on plaintiff's claims of breach of contract, third-party beneficiary status and negligence. BREC is denied summary judgment on GECO's claim for unjust enrichment.

A separate order shall accompany this Memorandum Opinion.